**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

EDUARDO ALBA-FLORES,
            *Defendant-Appellant.*

No. 08-50135

D.C. No.
3:06-CR-01748-
BEN

OPINION

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted
July 7, 2009—Pasadena, California

Filed August 18, 2009

Before: Alex Kozinski, Chief Judge, Ferdinand F. Fernandez
and N. Randy Smith, Circuit Judges.

Opinion by Judge Fernandez;
Dissent by Chief Judge Kozinski

11255

**COUNSEL**

Roseline D. Feral, San Diego, California; Vincent J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Joseph J.M. Orabona, U.S. Attorney's Office, San Diego, California, for the plaintiff-appellee.

**OPINION**

FERNANDEZ, Circuit Judge:

Eduardo Alba-Flores appeals his sentence for importation of methamphetamine. *See* 21 U.S.C. §§ 952, 960. Specifically, he asserts that the district court erred when it determined that he had more than one criminal history point under the United States Sentencing Guidelines because he was serving a term of probation at the time of his federal offense, although probation was terminated before he was sentenced. *See* USSG § 4A1.1(d).[1] That precluded a grant of relief under

---

[1]It appears that the district court applied the Sentencing Guidelines Manual effective November 1, 2005, but Alba-Flores was sentenced on

18 U.S.C. § 3553(f) and USSG § 5C1.2 ("safety valve relief"). We affirm.

## BACKGROUND

Alba-Flores was arrested on July 4, 2006, as he drove an automobile containing twenty packages of methamphetamine into the United States at San Ysidro, California. The methamphetamine was hidden in a special compartment in the trunk and appeared to weigh approximately 13 kilograms. Later analysis revealed that the methamphetamine actually weighed 8.774 kilograms.

On August 15, 2006, Alba-Flores waived indictment and pled guilty before a magistrate judge to charges of importing methamphetamine in violation of 21 U.S.C. §§ 952, 960. In his plea agreement, and in the plea colloquy, Alba-Flores acknowledged that there was a ten-year mandatory minimum sentence for the offense. *See* 21 U.S.C. § 960(b)(1). However, the agreement also contained a provision indicating that if Alba-Flores disclosed all information and evidence regarding his offense, and if he qualified for safety valve relief, the government would recommend the reduction of his offense level by two points and recommend relief from the ten-year statutory minimum sentence.

Unfortunately, the Presentence Report (PSR) revealed that Alba-Flores had pled guilty to driving with a suspended or revoked license in violation of California Vehicle Code § 14601.1(a) on February 22, 2006, and had been sentenced to a three-year term of probation. He was still subject to that

---

March 10, 2008, so the Sentencing Guidelines Manual effective November 1, 2007, should have been applied. As relevant here, USSG § 4A1.2(c)(1) in the 2005 manual had read "a term of probation of at least one year," but that was amended in the November 1, 2007, version of the manual to read "a term of probation of more than one year." The change does not impact this case, but references to the Guidelines in this opinion are to the November 1, 2007, version unless otherwise stated.

term of probation when he committed the instant offense. Because the conviction and sentence gave Alba-Flores more than one criminal history point, the PSR did not recommend safety valve relief. Therefore, with a total offense level of twenty-nine and a criminal history level of II, his corresponding Guideline range was 97-121 months. Because the statutory minimum sentence was 120 months, the PSR recommended the ten-year mandatory minimum.

On December 20, 2006, the district court adopted the magistrate judge's recommendation to accept Alba-Flores' guilty plea. Before the district court imposed any sentence, however, Alba-Flores asked for new counsel, whom the district court appointed. The court then continued the sentencing hearing.

Before the next hearing, Alba-Flores' attorney contacted Kern County, California, Deputy Public Defender, Dana S. Kinnison, who filed a "Motion to Reduce Charge and Terminate Probation" in Kern County Superior Court, which was directed at Alba-Flores' misdemeanor conviction. The caption indicated that the motion was being made pursuant to California Penal Code §§ 1203.3 and 19.8 and was filed because Deputy Public Defender Kinnison "received a call from an attorney in San Diego requesting that the court reduce the misdemeanor charge to an infraction to facilitate a more favorable disposition on a case pending in San Diego." The nature of the San Diego case was not explained. At a hearing on the motion on February 13, 2007, the superior court granted the motion, but called it a California Penal Code § 1203.4 motion, rather than a § 1203.3 motion. On the Order Reducing the Charge and Terminating Probation Nunc Pro Tunc, the court also hand wrote the note, "Dismissed as a PC 1203.4 GRW."[2] Similarly, the accompanying minute order indicated that the court granted the motion to dismiss and stated that the guilty plea is "set aside; a plea of not guilty is ordered entered and the count is dismissed pursuant to Penal

---

[2]The judge's name is Gary R. Witt.

Code section 1203.4." (All letters capitalized in order.) The order had the effect of reducing Alba-Flores' prior misdemeanor conviction to an infraction nunc pro tunc to the date he had committed that violation and then dismissing it, which ended Alba-Flores' probation also. Moreover, because that order was issued on February 13, 2007, Alba-Flores' probation terminated nine days short of his having served one year of it, which would have been February 22, 2007. Alba-Flores admitted that the sole purpose of the order was to affect his federal sentencing.

Back in district court, Alba-Flores moved to compel specific performance of the plea agreement, or, alternatively, to find him eligible for safety valve relief. He argued that the superior court's order reducing his misdemeanor conviction to an infraction nunc pro tunc meant that it could not be counted for criminal history purposes, so he should be eligible for safety valve relief. The government argued that the nunc pro tunc order did not expunge Alba-Flores' prior conviction for federal sentencing purposes, so it would still be countable under the Guidelines. *See United States v. Hayden*, 255 F.3d 768, 771-73 (9th Cir. 2001) (holding that a conviction set aside under § 1203.4 is not "expunged" and may be counted for criminal history purposes).

The district court held several hearings regarding sentencing and ultimately decided that Alba-Flores' base offense level under the Guidelines was thirty-four, but then reduced it by five levels for his minor role in the offense and for his acceptance of responsibility. It also accepted the government's argument that the proceedings in the superior court after Alba-Flores had committed his federal offense did not expunge his state conviction or otherwise permit the reduction of his three criminal history points, one for the state conviction itself[3] and two for his reoffending while on the term of

---

[3]*See* USSG § 4A1.1(c).

probation arising out of that conviction.[4] This appeal followed.

## STANDARDS OF REVIEW

We review de novo the district court's interpretation of the Sentencing Guidelines, but review for abuse of discretion the district court's application of the Guidelines to the facts, and review factual findings for clear error. *See United States v. Ferryman*, 444 F.3d 1183, 1185 (9th Cir. 2006). Our review of the district court's denial of safety valve relief is deferential, and we accept its factual findings unless we are "left with a definite and firm conviction that a mistake has been made." *Id.* at 1186.

## DISCUSSION

In order to avoid his 120-month mandatory minimum sentence, Alba-Flores has to demonstrate that he is entitled to safety valve relief. That requires that he show by a preponderance of the evidence that he meets all five conditions set forth in 18 U.S.C. § 3553(f). *See United States v. Ajugwo*, 82 F.3d 925, 929 (9th Cir. 1996). Were he to do so, relief would be mandatory. *See United States v. Cardenas-Juarez*, 469 F.3d 1331, 1335 (9th Cir. 2006). Here only one of those conditions is in question, that is, has he shown that he "does not have more than 1 criminal history point, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1).

In order to answer that question, we must refer to the arcane counting methodology set forth in Chapter 4 of the Guidelines. Specifically, we must consider the relationship between USSG § 4A1.1 and USSG § 4A1.2. The former sets forth the number of points to be added to a defendant's criminal history category, and the latter defines terms used in the former.

---

[4]*See* USSG § 4A1.1(d).

**[1]** Thus, under § 4A1.1(c), a defendant is given one criminal history point for each prior sentence countable under § 4A1.2, unless it is countable under § 4A1.1(a) or (b). *See* USSG § 4A1.1, comment. (n.3). Furthermore, a defendant is given two points under § 4A1.1(d) if he "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." The commentary to that section defines "criminal justice sentence" as a sentence "countable under § 4A1.2 . . . ." USSG § 4A1.1, comment. (n.4).[5]

**[2]** The parties agree that, at least up to the time Alba-Flores committed his federal offense, his conviction for driving when his driver's license had been revoked or suspended was within the relevant list. *See* USSG § 4A1.2(c). If that were all, there can be no doubt that Alba-Flores had more than one criminal history point.

Ah, says Alba-Flores, but I returned to the state court after I committed my federal offense and had my state sentence changed. Therefore, he argues, no criminal history points should be assigned to him because his state misdemeanor was reduced to an infraction nunc pro tunc, his probation was terminated before he had actually served one year, and because if his state conviction could not be used at sentencing under § 4A1.1(c), it follows that his violation of probation arising out of that offense could not be counted under § 4A1.1(d) either. We disagree with his conclusion.

**[3]** In effect, Alba-Flores' first argument is that what used to be his state conviction and sentence has now been expunged. It is true that "[s]entences for expunged convictions are not counted." USSG § 4A1.2(j).[6] However, not every

---

[5]Interpretation of the phrase "criminal justice sentence" is a question of federal law. *See Mateo v. United States*, 398 F.3d 126, 132 (1st Cir. 2005); *United States v. Martinez-Cortez*, 354 F.3d 830, 832 (8th Cir. 2004).

[6]Of course, sentences set aside because of errors of law, or discovery of exonerating evidence, or for constitutional invalidity are not counted either. *See* USSG § 4A1.2, comment. (n.6). Those exceptions do not apply here.

set aside of a state sentence counts as an expungement. As the Guidelines point out:

> A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, *e.g.*, in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted.

USSG § 4A1.2, comment. (n.10). That neatly covers California's procedure under California Penal Code § 1203.4. We made that plain when we pointed out that: "[t]o 'expunge' is 'to erase or [to] destroy,' and an 'expungement of record' is '[t]he removal of a conviction (esp. for a first offense) from a person's criminal record.' The text of California Penal Code section 1203.4 describes a more limited form of relief." *Hayden*, 255 F.3d at 771 (citations omitted). We added that under California law the convictions in question could still be used at a later time in a variety of circumstances, both criminal and civil. *See id.* at 771-72; *see also United States v. Stoterau*, 524 F.3d 988, 1000-01 (9th Cir. 2008). Thus, section 1203.4 relief does not result in an expungement.

**[4]** Alba-Flores argues that he was really proceeding under other sections of California law, but as we see it, that is little more than a quibble. California courts do have power to terminate probation when circumstances warrant it,[7] and to declare certain offenses to be infractions when they deem that appropriate.[8] Alba-Flores points out that those sections were referred to when he sought the order from the California Superior Court. Still, the purpose and effect were the same because it is obvious that a kind of removal of the conviction from his record for no truly good legal reason other than

---

[7]*See* Cal. Penal Code § 1203.3.

[8]*See* Cal. Penal Code § 19.8.

affecting the instant sentencing was desired. The superior court was not misled about that. While it did not have the details, it perceived what was afoot. The judge immediately said to counsel, who did not demur, that what was before him was "a 1203.4 motion." And both the minute order and the formal order reflected that the case was dismissed under California Penal Code § 1203.4.

**[5]** Thus, Alba-Flores cannot rely on an expungement theory to avoid the fact that he was convicted and sentenced for a countable misdemeanor. That, then, leads to Alba-Flores' similar, but different, argument regarding whether his state sentence can be considered at all despite the failure to effectively expunge it.

Alba-Flores' second argument is somewhat more banausic than the first one. He points to the fact that under § 4A1.2(c)(1):

> Sentences for the following prior offenses [including driving with a revoked or suspended license] and offenses similar to them by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense . . . .

We have held that the language "the sentence was a term of probation" in that Guideline means "a term of actual probation." *United States v. Mejia*, 559 F.3d 1113, 1116 (9th Cir. 2009); *see also United States v. Gonzales*, 506 F.3d 940, 944-45 (9th Cir. 2007) (en banc) (holding that in that Guideline "term of imprisonment" means a term of "actual incarceration").

In *Gonzales*, 506 F.3d at 942, a state court had sentenced the defendant to "thirty days in jail," but had immediately suspended that term. Thus, he was never incarcerated at all and

his misdemeanor sentence could not be counted. Similarly, in *Mejia*, 559 F.3d at 1115-16, the defendant was placed on two years summary probation but just three days later, and before he committed his federal offense, his term of probation was terminated. Thus, because he did not have a "term of actual probation" of over one year, his underlying offense could not be counted.

In *Mejia* we emphasized the fact that "the suspension of Mejia's sentence before he was placed on a truncated term of probation indicates that the offense of which he was convicted was not regarded as serious." *Id.* at 1116. The sentence here, when given, was obviously seen as a serious one (three years probation), but that does not necessarily avoid *Mejia*'s language. We did not clearly limit ourselves to considerations of seriousness at or about the time of the state sentencing, but noted that "Mejia's probationary sentence combined with his actual service of only a three-day probationary term was less than the one year required by § 4A1.2(c)(1)(A) for inclusion in his criminal history." *Id.* We continued: "Just as a 'term of imprisonment' means 'a term of actual confinement,' *Gonzales*, 506 F.3d at 994, n.2, a term of probation means a term of actual probation." *Id.*

The facts of this case are quite different from those in *Mejia* because there the state court changed the original sentence almost immediately and long before Mejia reoffended, whereas here Alba-Flores was still serving his original state sentence when he reoffended and, indeed, when he first appeared for federal sentencing. Nevertheless, *Mejia* exerts a strong, though not necessarily ineluctable, pull toward a conclusion that because it ultimately turned out that by the date of his sentencing Alba-Flores had not and never would serve over one year on probation, the district court should not have added one point to his criminal history score on account of his misdemeanor. Yet, we need not, and do not, decide that precise issue because, as we will show, it would make no differ-

ence to the ultimate conclusion that Alba-Flores has more than one criminal history point.

**[6]** Two cases from other courts of appeals point the way to our conclusion, although they do not decide the precise issue before us. Each of them eschewed the notion that a state court could affect federal sentencing by issuing a nunc pro tunc order after the concrete facts pertinent to the federal sentencing were already in place.

In the first one, the defendant had been sentenced to two separate terms of probation for different offenses, each a year or more in length, and had served over a year on probation before the federal conspiracy for which he was prosecuted ended. *See Martinez-Cortez*, 354 F.3d at 831-32. When faced with the federal sentencing consequences of his actions, he scuttled off to state court to get his probation terms reduced. *Id.* at 831. In effect, said the court, what he sought to do was expunge those state convictions for no other reason than to avoid "federal sentencing consequences," and that was after he had served a lengthy probationary period already. *Id.* at 832. But, the "state convictions were not expunged" at all. *Id.* The court continued:

> If Martinez-Cortez's convictions had been vacated for the express purpose of enabling him to become eligible for the safety valve, the sentences would have counted because the convictions would have been set aside for reasons unrelated to his innocence or errors of law. We conclude that, as a matter of federal law, Martinez-Cortez's lesser step of modifying his sentences after they were served for reasons unrelated to his innocence or errors of law is not a valid basis for not counting the sentences for criminal history purposes. Thus, when Martinez-Cortez committed the federal drug offense he remained under a sentence of probation for the purposes of

§ 4A1.1(d) and the district court was required to assess two criminal history points.

*Id.* (citations omitted).

The second of the cases is similar. There the defendant had been sentenced for a state misdemeanor and received a probation sentence of thirty-six months. *United States v. Pech-Aboytes*, 562 F.3d 1234, 1235-36 (10th Cir. 2009). He committed his federal offense while still serving that term, and, in fact, was on it for over a year. *Id.* at 1236 n.2. He, too, when faced with federal sentencing consequences, scurried off to state court to have his term of probation reduced retroactively. *Id.* at 1236. The court of appeals was not impressed. As it noted, his state convictions were not actually expunged,[9] or for that matter reversed or otherwise held to be invalid.[10] The court then quoted the analysis from *Martinez-Cortez*, and determined that the district court had properly assessed two criminal history points against Pech-Aboytes because he had reoffended while he was serving his term of state probation. *Id.* at 1237-39; *see also United States v. Caswell*, 36 F.3d 29, 31 (7th Cir. 1994) (stating that a mere nunc pro tunc order is not an expungement); *cf. United States v. Sumner*, 226 F.3d 1005, 1009-10 (9th Cir. 2000) (the purpose of nunc pro tunc orders is to correct mistakes, not to alter substance).

**[7]** The case at hand is not quite the same as those just described because here Alba-Flores had not yet served a full year of his state probation sentence as of the date of his federal offense, and later managed to induce the state court to set that sentence aside before he did serve a full year. But as we see it, even if the result of that state order is that he avoids the single point for the state misdemeanor conviction itself, that does not affect the concrete fact that he *was* "under [a] crimi-

---

[9]*See* USSG § 4A1.2(j) & comment. (n.10).

[10]*See* USSG § 4A1.2, comment. (n.6).

nal justice sentence"[11] when he committed his federal offense. The later state court order could not change that concrete fact. It is the actual situation at that precise point in time, not the situation at some earlier or later point that controls. Nor in *Mejia* did we intend to hold that when a person was actually under a probation sentence of more than a year at the time he committed his federal offense, he was not under a criminal justice sentence if he had not yet completed over a year of that state probation term. We were not then faced with that set of facts and did not consider or speak to it. We did not contemplate a situation where an offender's sentence would turn on whether he had actually completed over a year of his actual ongoing criminal justice sentence at the time he reoffended; nor did we suggest that we should just wait to see if he would do so. Now that we are faced with that situation, the proper inquiry is whether Alba-Flores was actually under a "criminal justice sentence" when he committed the offense at hand. He was.

**[8]** We note that the same odor of gaming the federal sentencing system that was emanating in the *Martinez-Cortez* and *Pech-Aboytes* cases emanates from this one. The existence of that miasma would not itself be sufficient to lead us to a decision against Alba-Flores. Nevertheless, again, even considering a proper interpretation of our "term of actual probation" stricture,[12] Alba-Flores was actually "under [a] criminal justice sentence" when he offended because he was then serving an actual term of probation whose length was for a period exceeding one year — indeed, it was a sentence of three years probation. Thus, by its plain language § 4A1.1(d) required the addition of two points,[13] and because that probation sentence was not thereafter expunged[14] or set aside on the basis of

---

[11]USSG § 4A1.1(d).

[12]*Mejia*, 559 F.3d at 1116.

[13]*See United States v. Brownstein*, 79 F.3d 121, 123 (9th Cir. 1996) (setting out plain language rule for construction of the Guidelines).

[14]USSG § 4A1.2(j) & comment. (n.10); *Hayden*, 255 F.3d at 774.

innocence or legal error,[15] it remained countable even after the state court's nunc pro tunc order. In short, Alba-Flores had two criminal history points and was not eligible for safety valve relief.

## CONCLUSION

At the time he committed his federal offense of importation of methamphetamine, Alba-Flores was serving an actual sentence of probation exceeding one year, which arose out of a state misdemeanor conviction. That sentence was not expunged by a state court within the meaning of USSG § 4A1.2(j) & comment. (n.10). Nor was it reversed or vacated due to innocence or errors of law within the meaning of USSG § 4A1.2, comment. (n.6). Therefore, he was properly assigned two criminal history points pursuant to USSG § 4A1.1(d), and was not eligible for safety valve relief pursuant to 18 U.S.C. § 3553(f).

AFFIRMED.

---

KOZINSKI, Chief Judge, dissenting:

Four months ago, in *United States* v. *Mejia*, 559 F.3d 1113 (9th Cir. 2009), we explained that the Guidelines calculate criminal history based on probation actually served, rather than the amount of probation originally pronounced. "Just as a 'term of imprisonment' means 'a term of actual confinement,' a term of probation means a term of actual probation." *Mejia*, 559 F.3d at 1116 (citing *United States* v. *Gonzales*, 506 F.3d 940 , 944 n.2 (9th Cir. 2007)). Alba-Flores served eleven months on probation for driving with a suspended license so, under *Mejia*, he didn't serve a "term of probation

---

[15]USSG § 4A1.2, comment. (n.6).

of more than one year" and gets no criminal history points for this offense. U.S.S.G. § 4A1.2(c)(1)(A).

The majority refuses to follow *Mejia*, precipitating a conflict in the law of the circuit. My colleagues seek to justify themselves by claiming that *Mejia* didn't "intend to hold that when a person was actually under a probation sentence of more than a year at the time he committed his federal offense, he was not under a criminal justice sentence if he had not yet completed over a year of that state probation term." Maj. Op. at 11269. But neither of my colleagues was on the *Mejia* panel, so they couldn't possibly know what *Mejia* "intended" beyond what its words say. And its words quite clearly say nothing like what the majority holds. If we were all free to ignore the language in opinions based on what we believe they secretly intended, the law of the circuit would be meaningless.

The majority holds that for ongoing sentences the Guidelines count *expected* length, but for completed sentences the Guidelines count *actual* length. This means that Alba-Flores's probationary term was more than one year when he committed his federal crime, but was under one year when he was sentenced. Nothing in the Guidelines supports such a Janus-faced interpretation of the same phrase; they refer simply to a "term of probation of more than one year." U.S.S.G. § 4A1.2(c)(1)(A). Nor does *Mejia*, which says only that "a term of probation means a term of actual probation." 559 F.3d at 1116.

The majority compounds the problem by relying on two out-of-circuit cases featuring defendants who actually served over a year of probation. According to the majority, these cases "eschewed the notion that a state court could affect federal sentencing by issuing a nunc pro tunc order after the concrete facts pertinent to the federal sentencing were already in place." Maj. Op. at 11267. But these cases aren't on point as

Alba-Flores served less than a year on probation and so did not need to shorten his sentence retroactively.

The majority nevertheless declares that the "same odor of gaming the federal sentencing system" emanating from those cases "emanates from this one." *Id.* at 11269. Perhaps the out-of-circuit cases have a point when state courts try to retroactively call a fish a fowl, but what possible "gaming" can there be when the state court reduces a criminal defendant's sentence prospectively so he *actually* serves less time? The federal system relies heavily on state courts in sentencing defendants and it's wrong and pernicious to call these judgments into question because the state judges may have taken into account the effects on federal sentencing. State judges are often mindful of the federal implications of their sentences, as well they should be. The majority is wrong to cast aspersions on this salutary practice.

The majority spends five pages discussing its sniff test, only to explain that this "miasma" wouldn't "itself be sufficient to lead us to a decision against Alba-Flores," leaving us guessing about its importance in the majority's analysis. *Id.* Surely an issue that gets such a lengthy discussion in an opinion must mean *something*. But we won't know what it means until a future panel guesses at what the majority here "intended."

In addition to creating a conflict in the law of the circuit and injecting uncertainty into sentencing, the majority contravenes the general principles of modern sentencing jurisprudence: "One theme runs through the Supreme Court's recent sentencing decisions: [*United States* v.] *Booker* empowered district courts, not appellate courts . . . . [and] breathe[d] life into the authority of district court judges to engage in individualized sentencing . . . ." *United States* v. *Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (internal quotation marks and citations omitted) (alterations in original). If a district court disagrees with the guidelines or feels that state courts are

meddling, it has broad discretion to give an above-guidelines sentence. The majority stands this principle on its head by forcing district courts to give extremely harsh sentences against their better judgment.

Neither of the judges who actually sentenced Alba-Flores —a first-time, unarmed, hapless drug deliveryman who's only prior was driving with a suspended license—thought he deserves to spend ten years in federal prison. The state court judge didn't think so and terminated Alba-Flores's probation early to avoid the harsh effects a longer period would have on his federal sentence. The federal judge agreed with the state judge but (wrongly) felt handcuffed by the pre-*Mejia* law. SER 210 ("[A]s I've said before, I'm not particularly keen about the idea of imposing minimum mandatory sentences in a case such as yours . . . but I think I'm bound to by law."). We shouldn't be so eager to override the hands-on judgment of two trial judges who have actually seen the defendant and are far more familiar with his need for punishment than we are.