**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

v.

DAVID YEPEZ,
   *Defendant-Appellant.*

No. 09-50271

D.C. No.
3:08-cr-03499-
LAB-1

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

UNITED STATES OF AMERICA,
   *Plaintiff-Appellant,*

v.

AUDENAGO ACOSTA-MONTES,
   *Defendant-Appellee.*

No. 09-50409

D.C. No.
3:08-cr-02350-L-1

OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, Senior District Judge, Presiding

Argued and Submitted
October 4, 2010—Pasadena, California

Filed July 25, 2011

9481

Before: Kim McLane Wardlaw and William A. Fletcher,
Circuit Judges, and Robert J. Timlin, Senior District Judge.*

Opinion by Judge Wardlaw;
Dissent by Judge Timlin

---

*The Honorable Robert J. Timlin, Senior United States District Judge
for the Central District of California, sitting by designation.

## COUNSEL

Vincent J. Brunkow, Federal Defenders of San Diego Inc., San Diego, California, for Audenago Acosta-Montes.

Michael Edmond Burke, San Diego, California, for David Yepez.

Karen P. Hewitt, United States Attorney, and Bruce R. Castetter, Kyle W. Hoffman, and Timothy C. Perry, Assistant United States Attorneys, San Diego, California, for the United States of America.

## OPINION

WARDLAW, Circuit Judge:

"[C]omity between state and federal courts . . . has been recognized as a bulwark of the federal system." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). California Penal Code § 1203.3 permits state judges who are supervising individuals placed on state probation to terminate retroactively the terms of probation to which they had previously sentenced those defendants. Each of the defendants in these consolidated appeals was serving such a probationary sentence when he committed and pleaded guilty to the charge of smuggling methamphetamine into the United States. Before sentencing on the federal charge, however, each defendant obtained a modification order retroactively terminating his state-court probationary sentence as of the day before he committed his

federal crime. Each argued to the state judge supervising him that failure to terminate the state probationary term would substantially increase his federal sentencing exposure by rendering him ineligible for safety-valve relief from the otherwise applicable ten-year statutory mandatory minimum. Though each federal district court judge observed that the mandatory minimum sentence was grossly excessive, the judge in Acosta-Montes's case deferred to the state court's *nunc pro tunc*[1] termination of probation while the judge in Yepez's case did not. We must determine whether, given the California state courts' wide latitude to modify ongoing probationary terms under California state law, the federal district courts in calculating criminal history points for purposes of safety valve eligibility must credit state orders terminating probationary sentences. We concluded that they must.

## I.

### A.   David Yepez

On July 18, 2007, David Yepez, who was then just over eighteen years old, pleaded guilty in California state court to driving under the influence of alcohol in violation of California Vehicle Code § 23152(b), and was placed on probation, initially for a period of three years. On September 16, 2008 Yepez, by then just over twenty years old, tried to enter the United States from Mexico while driving a vehicle containing more than seven kilograms of methamphetamine. After his arrest, Yepez explained that he needed money and had agreed to smuggle what he believed to be marijuana. As the district court later found, after crediting the border agents' testimony,

---

[1]"*Nunc pro tunc*" literally means "now for then," and is "used in reference to an act to show that it has retroactive legal effect." Bryan A. Garner, A Dictionary of Modern Legal Usage 607 (2d ed. 1995). The term signifies that "a thing is done now, which shall have same legal force and effect as if done at time when it ought to have been done." *United States v. Allen*, 153 F.3d 1037, 1044 (9th Cir. 1998) (quoting Black's Law Dictionary 964 (5th ed. 1979)).

Yepez was shocked to discover that the "marijuana" was in fact methamphetamine.[2] On November 4, 2008, pursuant to a plea agreement, Yepez pleaded guilty before a magistrate judge to one count of importing methamphetamine in violation of 21 U.S.C. §§ 952 & 960. Yepez acknowledged that he was subject to the ten year statutory minimum term of imprisonment, and waived his right to appeal "unless the Court imposes a custodial sentence above the greater of the high end of the guideline range recommended by the Government pursuant to this agreement at the time of sentencing or statutory mandatory minimum term, if applicable."[3]

In its February 17, 2009 Presentence Investigation Report ("PSR"), the United States Probation Office concluded that Yepez was ineligible for safety valve relief under 18 U.S.C.

---

[2]The district court observed that "someone who is younger, particularly 18, 19 years old, who hasn't had the full set of experiences yet is more apt to make mistakes of this type."

[3]Citing this language, the government argues that Yepez has waived the right to appeal his sentence. "We consider de novo whether, pursuant to a plea agreement, a defendant waived his right to appeal." *United States v. Leniear*, 574 F.3d 668, 672 (9th Cir. 2009) (citing *United States v. Speelman*, 431 F.3d 1226, 1229 (9th Cir. 2005)). The scope of a knowing and voluntary waiver "is demonstrated by the express language of the plea agreement." *Id.* (quoting *United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000)). "Plea agreements are generally construed according to the principles of contract law, and the government, as drafter, must be held to an agreement's literal terms." *Id.* Here, because the government drafted the plea agreement, we construe any ambiguities in favor of Yepez. *See United States v. Charles*, 581 F.3d 927, 931 (9th Cir. 2009).

Though Yepez waived his right to appeal a mandatory minimum sentence, if it is applicable, he is arguing that the minimum is *not* applicable because he is eligible for relief by operation of the state court order. The waiver language is susceptible to two interpretations: first, that Yepez waived his right to appeal the applicability determination as part of his general waiver; and second, that Yepez did *not* waive his right to appeal the applicability determination, but waived his right to appeal only a mandatory minimum sentence imposed following that determination. Because the language is ambiguous, we conclude that Yepez has not waived his right to appeal the eligibility question.

§ 3553(f). The Probation Office assigned two criminal history points U.S.S.G. § 4A1.1(d) for Yepez's commission of the offense while on probation for his 2007 DUI conviction, and therefore recommended the ten-year mandatory minimum sentence. While the government agreed with the recommendation, it noted that it would have recommended a sentence of 57 months had Yepez qualified for safety valve relief. Following disclosure of the PSR, Yepez moved for *nunc pro tunc* termination of probation under California Penal Code § 1203.3. On April 22, 2009, the state judge supervising his probation ordered Yepez's ongoing probation terminated as of September 15, 2008, the day before Yepez committed his federal offense.

At his May 18, 2009, federal sentencing hearing, Yepez objected to the sentencing recommendation, arguing that the state-court *nunc pro tunc* order made him eligible for safety valve relief, because by operation of state law he was *not* on probation when he committed his federal offense, so he did not have "more than 1 criminal history point." 18 U.S.C. § 3553(f)(1). The government argued that the state court could not rewrite the historical fact that, at the time of the federal offense, Yepez had been on state probation. The district court imposed the mandatory minimum sentence of 120 months imprisonment despite its view that a 63 month sentence of imprisonment was the appropriate sentence. The court stated, "I wouldn't give Mr. Yepez a 10-year sentence if it was up to me, if I had discretion. Wouldn't do it. I think that's disproportionate given his background, but that's not what's at issue. . . . I don't like it. I really don't like it. . . . I have imposed [this sentence] because I felt like I had to. That's the only reason."

## B.   Audenago Acosta-Montes

In 2006, Audenago Acosta-Montes, a lawful permanent resident, was convicted in California state court of one count of misdemeanor theft for shoplifting from a Target store, and

was sentenced to one day in county jail and three years of probation. On May 7, 2008, Acosta-Montes attempted to enter the United States near San Ysidro, California, while driving a pickup truck containing approximately 3.30 kilograms of methamphetamine. On October 2, 2008, pursuant to a plea agreement, Acosta-Montes pleaded guilty to one count of importation of methamphetamine in violation of 21 U.S.C. §§ 952 & 960.

The Probation Office concluded that Acosta-Montes was ineligible for safety valve relief because when he committed the federal offense he remained on probation from his shoplifting conviction, and so had more than one criminal history point. The government accordingly recommended the ten-year statutory mandatory minimum term of imprisonment. Acosta-Montes sought and received a continuance of his sentencing date, and then moved in state court for an order retroactively terminating his probation to May 6, 2008, the day before he committed the federal offense. On April 1, 2009, the state court granted Acosta-Montes's motion over the state's opposition.

At Acosta-Montes's July 13, 2009 sentencing hearing, the district court credited the order modifying Acosta-Montes's ongoing probationary term, and concluded that Acosta-Montes was safety-valve eligible. Responding to the government's objections, the district court stated that, being "brutally honest," it disagreed with "hamstringing a court with a mandatory minimum where facts don't deserve that." The court explained that, given the nature of Acosta-Montes's offense, the nonviolent nature of Acosta-Montes's criminal record, which consisted solely of misdemeanor offenses, and Acosta-Montes's personal circumstances, a ten-year term of imprisonment was far too high. "The defendant isn't free of criminal conduct," the court observed, "but he has been a productive worker that has provided for his family and children." The court imposed a sentence of imprisonment of 46 months.

## II.

We review "the 'district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of [a] case for abuse of discretion, and the district court's factual findings for clear error.'" *United States v. Franco-Flores*, 558 F.3d 978, 980 (9th Cir. 2009) (quoting *United States v. Alvarez-Hernandez*, 478 F.3d 1060, 1063 (9th Cir. 2007)) (alteration in original). The "assessment of prior convictions in calculating a defendant's criminal history category is [also] reviewed de novo." *Id.*

## III.

**[1]** Congress has set statutory minimum sentences for numerous drug crimes, but also enacted a "safety valve," 18 U.S.C. § 3553(f), which permits courts to "disregard the statutory minimum in sentencing first-time nonviolent drug offenders who played a minor role in the offense and who 'have made a good-faith effort to cooperate with the government.'" *United States v. Shrestha*, 86 F.3d 935, 938 (9th Cir. 1996) (quoting *United States v. Arrington*, 73 F.3d 144, 147 (7th Cir. 1996)). The purpose of the safety valve is "to rectify an inequity in this system, whereby more culpable defendants who could provide the Government with new or useful information about drug sources fared better . . . than lower-level offenders, such as drug couriers or 'mules,' who typically have less knowledge." *Id.* As the legislative history of the section states, "Ironically, [ ] for the very offenders who most warrant proportionally lower sentences — offenders that by guideline definitions are the least culpable — mandatory minimums generally operate to block the sentence from reflecting mitigating factors." *Id.* (citing H.R. Rep. No. 103-460, 103d Cong., 2d Sess., 1994 WL 107571 (1994)) (alteration in original).

**[2]** A defendant is eligible for the safety valve when:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).

**[3]** In both of these appeals, the government concedes that the defendants meet four of these five requirements; the only question is whether either of the defendants had more than one criminal history point as defined by the Sentencing Guidelines, *see* 18 U.S.C. § 3553(f)(1). Under the Guidelines, a defendant receives two criminal history points "if the defen-

dant committed the instant offense while under any criminal justice sentence, including probation . . . ." U.S.S.G. § 4A1.1(d). In other words, each defendant's eligibility for safety valve relief turns on whether he was on probation when he committed his federal offense.

## IV.

As the California courts have regularly and routinely recognized for a century, courts in California retain and exercise very broad supervisory authority over ongoing probationary terms. *See, e.g.*, *People v. Howard*, 946 P.2d 828, 835 (Cal. 1997); *People v. Carbajal*, 899 P.2d 67, 70 (Cal. 1995) (State courts have "broad discretion to determine whether an eligible defendant is suitable for probation and, if so, under what conditions") (citing Cal. Pen. Code § 1203.1(b)); *People v. Cookson*, 820 P.2d 278, 281 (Cal. 1991) ("A court may revoke or modify a term of probation at any time before the expiration of that term. This power to modify includes the power to extend the probationary term.") (citation omitted); *People v. Lippner*, 26 P.2d 457, 458 (Cal. 1933) ("[T]he trial court is clothed with a wide discretion in the granting and revoking of the probation of a person convicted of crime."); *People v. Kwizera*, 93 Cal. Rptr. 2d 522, 523 (Ct. App. 2000) ("[T]he trial court has authority to empower the probation department with authority to supervise the probation conditions."); *In re Gonzales*, 118 Cal. Rptr. 69, 71 (Ct. App. 1974) ("A court is vested with continuing discretion to continue a defendant on probation or to revoke probation. The exercise of that discretion is a judicial power manifested through the judge's personal examination of the case before him . . . .") (citations omitted); *People v. Buford*, 117 Cal. Rptr. 333, 337 (Ct. App. 1974) ("Just as the Adult Authority has continuing jurisdiction over its parolees, so the court has continuing jurisdiction over its probationers.") (internal citations omitted); *People v. Brown*, 244 P.2d 702, 704 (Cal. Ct. App. 1952); *People v. O'Donnell,* 174 P. 102, 104 (Cal. Ct. App. 1918) ("The authority in a court to suspend a sentence or the execution

thereof in a criminal case and liberating the defendant for a certain period is wholly statutory, and the statute itself furnishes the measure of the power which may thus be exercised.").

**[4]** The "wholly statutory," *Howard*, 946 P.2d at 835, wide-ranging authority of California state courts to supervise — as well as to modify or revoke — ongoing probationary terms is set forth in California Penal Code § 1203.3(a), which provides:

> The court shall have authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence. The court may at any time when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it, terminate the period of probation, and discharge the person so held.

The State recognizes the important role of probation in the criminal justice system. As the California Supreme Court has explained, "[a]n integral and important part of the penological plan of California is the discretionary retention in the trial court of jurisdiction over the defendant and the cause of action against him [or her] . . . by virtue of the probation procedures." *People v. Feyrer*, 226 P.3d 998, 1007 (Cal. 2010) (quoting *People v. Banks*, 348 P.2d 102, 111 (Cal. 1959)) (alteration in original). The California Supreme Court has also observed that

> [g]rant of probation is, of course, qualitatively different from such traditional forms of punishment as fines or imprisonment. Probation is neither "punishment" nor a criminal "judgment." Instead, courts deem probation an act of clemency in lieu of punishment, and its primary purpose is rehabilitative in nature. . . .

> [T]he authority to grant probation and to suspend imposition or execution of sentence is wholly statutory. During the probationary period, the court retains jurisdiction over the defendant, and at any time during that period the court may, subject to statutory restrictions, modify the order suspending imposition or execution of sentence.

*Howard*, 946 P.2d at 835 (internal citations omitted).

That California's probation statutes reflect the understanding that courts supervising probation will actually *supervise* — that is, change the circumstances as the "ends of justice," *see, e.g.*, Cal. Penal Code § 1203.3, and the behavior of the supervised individuals demand — is highlighted by the state courts' recognition that authority under § 1203.3 immediately ends once the period of probation is over. As the California Supreme Court has repeatedly observed, "The cases [concerning California Penal Code § 1203.3] have consistently taken the view announced in *People v. O'Donnell,* 174 P. 102, 104 (Cal. Ct. App. 1918), that . . . 'the court loses jurisdiction or power to make an order revoking or modifying the order suspending the imposition of sentence or the execution thereof and admitting the defendant to probation after the probationary period has expired.' " *In re Griffin*, 431 P.2d 625, 627 (Cal. 1967) (collecting cases).

**[5]** The California trial courts' authority over ongoing terms of probation granted by California Penal Code § 1203.3 explicitly differs from the power that California has given its courts to set aside convictions under California Penal Code § 1203.4(a). Section 1203.4(a) governs only persons who have already completed probation or for whom probation has been terminated. It provides that

> in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this

section, the defendant shall, at any time after the ter-
mination of the period of probation, if he or she is
not then serving a sentence for any offense, on pro-
bation for any offense, or charged with the commis-
sion of any offense, be permitted by the court to
withdraw his or her plea of guilty or plea of nolo
contendere and enter a plea of not guilty; or, if he or
she has been convicted after a plea of not guilty, the
court shall set aside the verdict of guilty; and, in
either case, the court shall thereupon dismiss the
accusations or information against the defendant and
except as noted below, he or she shall thereafter be
released from all penalties and disabilities resulting
from the offense of which he or she has been con-
victed . . . .

Unlike § 1203.3, which grants courts authority over *ongoing*
probationary terms, a "grant of relief under section 1203.4 is
intended to reward an individual who successfully *completes
probation* by mitigating some of the consequences of his con-
viction and, with a few exceptions, to restore him to his for-
mer status in society to the extent the Legislature has power
to do so." *People v. Mgebrov*, 82 Cal. Rptr. 3d 778, 781 (Ct.
App. 2008) (emphasis added) (quoting *People v. Field*, 37
Cal. Rptr. 2d 803, 808 (Ct. App. 1995)).

## V.

**[6]** Where, as here, state laws permit the modification of
ongoing terms of probation, principles of comity — what the
United States Supreme Court has recognized as "a bulwark of
the federal system," *Allen*, 449 U.S. at 96 — require that the
federal courts should, where possible, recognize state court
actions terminating those probationary terms. Forty years ago,
the Supreme Court addressed the nature and importance of
comity between federal and state courts in its decision in
*Younger v. Harris*, 401 U.S. 37, 44 (1971):

> The concept [of comity represents] a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, "Our Federalism," born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future.

By crediting state trial court terminations of ongoing probationary terms, federal courts respect the fundamental "[p]rinciples of comity and federalism [that] counsel against substituting our judgment for that of the state courts" which are actually supervising the individuals on probation. *See Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also United States v. Alba-Flores*, 577 F.3d 1104, 1112 (9th Cir. 2009) (Kozinski, C.J., dissenting) ("The federal system relies heavily on state courts in sentencing defendants and it's wrong and pernicious to call these judgments into question because the state judges may have taken into account the effects on federal sentencing. State judges are often mindful of the federal implications of their sentences, as well they should be.").

**[7]** Although it does not dictate our holding, requiring federal district courts to credit state court orders terminating or modifying ongoing state probationary sentences enhances sentencing discretion for those very courts. In sentencing Yepez and Acosta-Montes, both district judges repeatedly expressed their frustration with the criminal history calculations that eliminated eligibility for otherwise-warranted safety valve relief. Our holding makes room for district courts facing similar cases to impose individualized sentences consistent with the principles set forth in 18 U.S.C. § 3553(a), rather

than compelling judges, against their better judgment, to impose sentences they find grossly excessive. That said, our decision does not *require* judges to impose sentences below the statutory mandatory minimums simply because defendants in these circumstances are eligible for safety valve relief, when lower sentences are not merited. Instead, as in all other cases, a district court in imposing a sentence "must make an individualized determination based on the facts." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). After correctly calculating the applicable Guidelines range, *see id.*, including factoring in safety valve eligibility, a district court may impose an above-Guidelines sentence when it is warranted. *See, e.g.*, *United States v. Cardenas-Juarez*, 469 F.3d 1331, 1334 (9th Cir. 2006) ("When the statutory safety valve requirements of § 3553(f) are met, 'district courts still "must consult [the] Guidelines and take them into account when sentencing," even though they now have the discretion to impose non-Guidelines sentences.'") (quoting *United States v. Cantrell*, 433 F.3d 1269, 1278 (9th Cir. 2006)). And because the state supervising judges are aware of the implications of modification orders in federal sentence, where they believe the mandatory minimum is warranted they would be unlikely to grant a request for such an order.

## VI.

Rejecting Yepez's argument that he was made eligible for safety valve relief by the state termination order, the district court reasoned that this result was dictated by the Application Notes to U.S.S.G. § 4A1.2, in particularly Notes 6 and 10. While these application notes address circumstances under which certain prior convictions should not be counted for the purposes of arriving at a guidelines sentence, however, neither Note says anything about how courts should count ongoing probationary terms modified or retroactively terminated by state court orders.

According to Application Note 6, which concerns "Reversed, Vacated, or Invalidated convictions":

> Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted. With respect to the current sentencing proceeding, this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law (e.g., 21 U.S.C. § 851 expressly provides that a defendant may collaterally attack certain prior convictions).

U.S. Sentencing Guidelines Manual § 4A1.2 cmt. n.6 (2010). Application Note 10, which concerns "Convictions Set Aside or Defendant Pardoned," states:

> A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not counted. § 4A1.2(j).

U.S. Sentencing Guidelines Manual § 4A1.2 cmt. n.10 (2010).

Although the Guidelines themselves are advisory only, the applicable Guidelines sentence must be calculated correctly. *See, e.g.*, *Carty*, 520 F.3d at 993. Commentary in the Application Notes interpreting or explaining a guideline "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993); *United States v. Bays*, 589 F.3d 1035, 1037 (9th Cir. 2009). Neither of these two application notes, however, addresses how sentencing courts are to apply state trial court orders that

modify or terminate retroactively ongoing probationary terms. The state court orders concerning Yepez and Acosta-Montes did not set aside, expunge, reverse, vacate, or invalidate the convictions, nor did they pardon the defendants. *See, e.g.*, *United States v. Martinez-Cortez*, 354 F.3d 830, 834 (8th Cir. 2004) (Lay, J., dissenting) ("There is no question that the state court's modification of the probationary terms did not 'expunge' [the defendant's] convictions. Similarly, there is no question that the modification of the probationary sentence did not 'set aside' the state court convictions. Application Note 10 simply does not address the modification of a prior sentence and is therefore not controlling."). Contrary to the *Yepez* district court's conclusion, Application Notes 6 and 10 to U.S.S.G. § 4A1.2 do not dictate the outcome of these two appeals.

While Application Notes 6 and 10 do not address the situation before us, at least one other Application Note in the Commentary undercuts the government's argument that, in calculating criminal history under the Guidelines judges should take a "snapshot" of the situation at the exact moment the federal offense is committed, and should not allow that snapshot to be "photoshopped" later. Under the government's theory, courts applying the Guidelines should disregard what occurs *after* the commission of the federal offense but before sentencing for that offense. According to Application Note 1, however:

> "Prior sentence" means a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense. *See* § 4A1.2(a). A sentence imposed *after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense*, is a prior sentence if it was for conduct other than conduct that was part of the instant offense.

U.S. Sentencing Guidelines Manual § 4A1.2 cmt. n.1 (2010) (emphasis added). In other words, in counting "prior sen-

tences," courts are required to count at least some sentences that had *not yet been imposed* at the time the defendant committed the instant offense, but that were imposed before sentencing for the instant offense. Blanket acceptance of the government's "snapshot" theory is contrary to Application Note 1, and so could result in procedural error. *See, e.g.*, *Carty*, 520 F.3d at 993 ("It would be procedural error for a district court to fail to calculate — or to calculate incorrectly — the Guidelines range.").

## VII.

The government further argues that we are bound by the holding in *United States v. Alba-Flores*, 577 F.3d 1104 (9th Cir. 2009) to conclude that federal courts, when imposing sentences, may not credit state orders modifying or terminating ongoing probationary terms. We disagree. In *Alba-Flores*, the defendant's prior sentence had been set aside under California Penal Code § 1203.4 — and so the trial courts had not, as here, exercised supervisory authority over ongoing probationary terms under California Penal Code § 1203.3. More importantly, even giving *nunc pro tunc* effect to the state court order under § 1203.4 in *Alba-Flores*, the defendant in that case remained on probation at the time he committed his federal offense. The *Alba-Flores* decision simply does not address the question we confront in these appeals.

Eduardo Alba-Flores was arrested on July 4, 2006, as he drove an automobile containing almost nine kilograms of methamphetamine into the United States. *Alba-Flores*, 577 F.3d at 1105. On December 20, 2006, the district court accepted Alba-Flores's guilty plea to charges of importing methamphetamine in violation of 21 U.S.C. §§ 952 and 960. *Id.* at 1105-06. Previously, on February 22, 2006, Alba-Flores had pleaded guilty in California state court to the misdemeanor of driving with a suspended or revoked license in violation of California Vehicle Code § 14601.1(a), and had been sentenced to three years of probation. *Id.* at 1106. In the PSR

it prepared for Alba-Flores's sentencing, the Probation Office indicated that this state conviction and sentence together gave Alba-Flores more than one criminal history point, and rendered him ineligible for safety-valve relief and subject to the 120-month statutory minimum term of imprisonment. *Id.*

Before Alba-Flores's federal sentencing hearing, however, Alba-Flores filed a motion in state court seeking to reduce his state charge and terminate his state probation. *Id.* The motion's caption indicated that it was made pursuant to California Penal Code §§ 1203.3 and 19.8. *Id.* At a state hearing on February 13, 2007, the superior court "granted the motion, but called it a California Penal Code § 1203.4 motion, rather than a § 1203.3 motion." *Id.* On the proposed order, the court also hand-wrote the note, "Dismissed as a PC 1203.4." *Id.* The accompanying minute order indicated that the court had granted the motion to dismiss and stated that the guilty plea was "set aside; a plea of not guilty is ordered entered and the count is dismissed pursuant to Penal Code section 1203.4." *Id.* This order thus

> had the effect of reducing Alba-Flores' prior misdemeanor conviction to an infraction nunc pro tunc to the date he had committed that violation and then dismissing it, which ended Alba-Flores' probation also. Moreover, because that order was issued on February 13, 2007, Alba-Flores' probation terminated nine days short of his having served one year of it, which would have been February 22, 2007.

*Id.* Therefore, after operation of the *nunc pro tunc* order, Alba-Flores's probation was terminated on February 13, 2007 — almost one year after he pleaded guilty to the state offense and more than seven months after he attempted to smuggle methamphetamine into the United States.

Having obtained the *nunc pro tunc* order, Alba-Flores then argued in district court that he was safety valve eligible. *Id.*

at 1107. The district court "accepted the government's argument that the proceedings in the superior court after Alba-Flores had committed his federal offense did not expunge his state conviction or otherwise permit the reduction of his three criminal history points, one for the state conviction itself and two for his reoffending while on the term of probation arising out of that conviction." *Id.* Alba-Flores appealed, and we affirmed. Chief Judge Kozinski dissented.

Alba-Flores made two discrete arguments: the first was, "[i]n effect . . . that what used to be his state conviction and sentence [had] now been expunged." *Alba-Flores*, 577 F.3d at 1108. The *Alba-Flores* majority rejected this argument, concluding that "California's procedure under California Penal Code § 1203.4" did not "count[ ] as an expungement" under the Guidelines. *Id*. This conclusion is irrelevant to these appeals: neither Acosta-Montes nor Yepez argue that their probationary sentences were expunged, and neither modification was made under California Penal Code § 1203.4.[4] *Cf. Garcia-Lopez v. Ashcroft*, 334 F.3d 840, 846 (9th Cir. 2003) ("[A] state court expungement of a conviction is qualitatively different from a state court order to classify an offense or modify a sentence.").

---

[4]Having reached its conclusion regarding the effect of California Penal Code § 1203.4, the *Alba-Flores* court addressed, but rejected, Alba-Flores's argument that the *nunc pro tunc* order was in fact issued under § 1203.3 instead. *Alba-Flores*, 577 F.3d at 1108-09. The majority then observed that it would not have decided the case differently had the *nunc pro tunc* order in fact been issued under § 1203.3. This conclusion is irrelevant to these appeals: how a court *would have* decided a question not actually before it does not constitute binding precedent, because it is not germane to the final outcome. *See Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) ("Where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense." (*quoting United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) (Kozinski, J., concurring)). In any event, this discussion came only in the context of addressing Alba-Flores's expungement argument.

Alba-Flores's second argument was that, as his sentence was terminated nine days before he would have served a full year of probation, he had not served and would never serve a probationary sentence of more than a year, therefore, the district court should not have counted his sentence of probation at all. *See* U.S.S.G. § 4A1.2(c)(1) ("Sentences . . . are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days . . . ."). To address this argument, the *Alba-Flores* majority was required to maneuver around our earlier decision in *United States v. Mejia*, 559 F.3d 1113, 1116 (9th Cir. 2009), in which we held that "[j]ust as a 'term of imprisonment' means 'a term of actual confinement,' a term of probation means a term of actual probation." *See Alba-Flores*, 577 F.3d at 1109-10 ("Nevertheless, *Mejia* exerts a strong, though not necessarily ineluctable, pull toward a conclusion that because it ultimately turned out that by the date of his sentencing Alba-Flores had not and never would serve over one year on probation, the district court should not have added one point to his criminal history score on account of his misdemeanor."). The *Alba-Flores* majority concluded that it did not need to address Alba-Flores's argument directly, because "it would make no difference to the ultimate conclusion that Alba-Flores has more than one criminal history point." *Id.* at 1110. Even if Alba-Flores avoided the point for the prior conviction itself, the majority wrote, "that does not affect the concrete fact that he *was* 'under [a] criminal justice sentence' when he committed his federal offense." *Alba-Flores*, 577 F.3d at 1111. "[T]he proper inquiry," the *Alba-Flores* court added, "is whether Alba-Flores was actually under a 'criminal justice sentence' when he committed the offense at hand. He was." *Id*.

In the end, then, the *Alba-Flores* majority's decision was predicated on the observation that, by any measure, and even after operation of the *nunc pro tunc* order, Alba-Flores was on state probation until February 13, 2007. As a result, Alba-Flores was "under [a] criminal justice sentence" when he

committed his federal offense on July 4, 2006. *See id.* at 1106-07. Acosta-Montes and Yepez, in contrast, were *not* on probation when they committed their federal offenses — at least according to California, the state that imposed and was monitoring their probation. Thus, the *Alba-Flores* court did not address the question now before us, and its holding does not govern the outcome of these appeals. *See Proctor v. Vishay Intertech. Inc.*, 584 F.3d 1208, 1226 (9th Cir. 2009) ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions.") (quoting *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985)); *E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1046 n.14 (9th Cir. 2007) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having [been] so decided as to constitute precedents." (quoting *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 839 (9th Cir. 2001))).

The *Alba-Flores* majority subscribed to a broad principle "eschew[ing] the notion that a state court could affect federal sentencing by issuing a *nunc pro tunc* order after the concrete facts pertinent to the federal sentencing were already in place." *Alba-Flores*, 577 F.3d at 1110. As we have said in the past, however, "the doctrine of *stare decisis* concerns the holdings of previous cases, not the rationales . . . . Insofar as precedent is concerned, *stare decisis* is important only for the decision, for the detailed legal consequence following a detailed set of facts." *In re Osborne*, 76 F.3d 306, 309 (9th Cir. 1996); *see also United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (en banc) (Kozinski, J., concurring) ("Of course, not every statement of law in every opinion is binding on later panels. Where it is clear that a statement is made casually and without analysis, where the statement is uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention, it may be appropriate to revisit the issue in a later case."). That the *Alba-Flores* majority subscribed to a broad general principle does not mean that the

majority's formulation of that principle is binding precedent. Indeed, we believe that an extension of the *Alba-Flores* rationale in the context of already completed probationary terms to the context of ongoing state-supervised probation would represent a further unwarranted intrusion into the states' criminal sentencing prerogatives, and would further offend a proper understanding of comity and federalism.

Under any calculation, Alba-Flores was on probation when he committed his federal offense, even after operation of the state court's § 1203.4 *nunc pro tunc* order. By contrast, after operation of the state courts' § 1203.3 *nunc pro tunc* orders in their cases, Acosta-Montes and Yepez were no longer on probation when they committed their federal offenses. Therefore, the majority's holding in *Alba-Flores* as to the effect of state court § 1203.4 orders does not dictate the outcome of these two appeals.

## VIII.

The government also points to *United States v. Martinez-Cortez*, 354 F.3d 830 (8th Cir. 2004) and *United States v. Pech-Aboytes*, 562 F.3d 1234 (10th Cir. 2009), two out-of-circuit decisions (relied on by the *Alba-Flores* majority) holding that sentencing courts should not credit state *nunc pro tunc* orders modifying terms of probation. Unlike either Yepez or Acosta-Montes, however, the defendant in *Martinez-Cortez* sought to modify *already completed* sentences. Both the Eighth and Tenth Circuits, moreover, relied on an incorrect view of the "implications" of the Application Notes to U.S.S.G. § 4A1.2, and ultimately reached conclusions not in fact supported by any authority.

In *Martinez-Cortez*, the defendant, Jerardo Martinez-Cortez, pleaded guilty to conspiracy to distribute methamphetamine. *Martinez-Cortez*, 354 F.3d at 831. Martinez-Cortez had two previous Minnesota state convictions: one for leaving the scene of an accident, and one for driving while

intoxicated. *Id.* For the first, Martinez-Cortez had been sentenced to ninety days in jail, with eighty-nine days suspended, followed by one year of probation. *Id.* For the second, he had been sentenced to thirty days in jail, with twenty-nine days stayed, and placed on probation for two years. *Id.* Martinez-Cortez was on probation from the DWI offense when he committed his federal drug offense, but had completed the probationary term by the time he was sentenced in federal court. *Id.*

After he pleaded guilty to his federal offense, but before sentencing, Martinez-Cortez sought and received *nunc pro tunc* orders from two state judges modifying his already-completed probationary terms. *Id.* He sought and received a reduction of his first probationary term (for leaving the scene of an accident) from 365 days to 364 days "for the express purpose of avoiding a criminal history point in his federal drug sentencing." *Id.* For the DWI term of probation, Martinez-Cortez "sought and received a reduction of the term of probation from June 19, 2002, to September 30, 2000, so 'he would be off supervision during the time the government alleges the federal [drug] conspiracy was in existence.' " *Id.* The district court credited the *nunc pro tunc* orders, and found that Martinez-Cortez was safety valve eligible; the Eighth Circuit reversed, with one judge dissenting. *Id.*

In concluding that Martinez-Cortez was not eligible for safety valve relief, the Eighth Circuit majority concluded that, as "a factual matter," Martinez-Cortez had committed his federal drug offense "while he was on probation for the DWI offense." *Id.* at 832. The majority ultimately held that, as Martinez-Cortez had already served his sentences before asking that they be modified *nunc pro tunc*, this was not one of those situations in which the Sentencing Guidelines "permit courts to disregard some state court convictions and sentences for the purposes of criminal history." *Id.* The majority concluded that "as a matter of federal law, Martinez-Cortez's lesser step of modifying his sentences *after they were served* for reasons unrelated to his innocence or errors of law is not

a valid basis for not counting the sentences for criminal history purposes." *Id.* (emphasis added).

Writing in dissent, Judge Lay criticized the majority decision as being incorrect and "without authority." *Id.* at 833 (Lay, J. dissenting). "The majority opinion, in all due respect," he wrote

> fails to address the fundamental principles of federalism and deference owed by federal courts to state courts in processing their own criminal cases. The structure of the Guidelines evidences an intent on the part of the Sentencing Commission to look to the sentences actually imposed by state courts for state criminal convictions when calculating a federal defendant's criminal history score. Consonant with this idea, the Supreme Court has made clear that the proper forum in which to attack state convictions (and their attendant sentences) is a state court, not a federal one. In assessing the length of a federal sentence, therefore, the sentencing court looks only at the prior state sentences as they exist at the time of sentencing. . . . More importantly, the Defendant appeared before two distinguished state court judges who ordered the terms of probation modified. There was no appeal from these modifications. The state court proceedings thus carry with them a presumption of regularity that the majority lightly casts aside.

*Id.* at 833-34 (internal citations omitted). The majority, he concluded, "fails to provide proper respect for and deference to the state court's modification of its own sentences." *Id.* at 835.

We agree with Judge Lay, and moreover find that *Martinez-Cortez* is factually distinguishable from the two appeals before us. What Martinez-Cortez sought to do by having his *already completed* sentences modified by action of

state law is different from what either Yepez or Acosta-Montez sought to do by asking the trial judges overseeing their ongoing probationary terms to modify those terms. *See, e.g.*, Cal. Penal Code § 1203.3 (addressing the authority of state courts *during the term of probation* "to revoke, modify, or change its order of suspension of imposition or execution of sentence").

In *Pech-Aboytes*, the defendant, Paul Pech-Aboytes (a/k/a Javier Solis-Aboytes), pleaded guilty in 2007 to one count of possession with intent to distribute methamphetamine. 562 F.3d at 1235. In 2002, Pech-Aboytes had been convicted of a misdemeanor in California state court for manufacturing government-issued commercial drivers licenses, and had been sentenced to thirty-six months of probation. *Id*. at 1236, 1236 n.1. Due to "several probation revocations and reinstatements," Pech-Aboytes's California state probation was ongoing in 2007, when he committed his federal drug offense. *Id.* at 1236 & 1236 n.2. After he pleaded guilty, but before he was sentenced, Pech-Aboytes sought and received a *nunc pro tunc* order from a California state court terminating his probation as of September 30, 2007. *Id.* at 1236. At sentencing, the district court (relying on the Eighth Circuit's decision in *Martinez-Cortez*) declined to credit the state *nunc pro tunc* order, and found that Pech-Aboytes was not entitled to safety valve relief; the Tenth Circuit affirmed. *Id.* at 1238-39.

In concluding that Pech-Aboytes was not eligible for safety-valve relief, the Tenth Circuit cited Application Notes 6 and 10 to U.S.S.G. § 4A1.2, and reasoned that "the Guidelines are specific about which prior convictions and sentences are counted in calculating a defendant's criminal history points, and which prior convictions and sentences are not." *Id.* at 1239. The *Pech-Aboytes* court then observed that "[t]he implication" of Application Note 10 "is that the district court should count previous convictions unless they have been set aside because of a finding of innocence or legal error." *Id*. The Tenth Circuit also cited the introductory commentary to

the criminal history section of Chapter 4 of the Sentencing Guidelines:

> A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence. To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation.

U.S. Sentencing Guidelines Manual § 4A intro. cmt. (2010). This commentary, the court observed, "further indicates that the Guidelines are intended to capture, via an increase in criminal history points, the very behavior [the defendant] was attempting to avoid: the commission of a crime while under a probationary sentence. Such behavior is directly relevant to the harsher, mandatory-minimum penalty imposed when the safety-valve provision is inapplicable." *Pech-Aboytes*, 562 F.3d at 1240.

We disagree with the Tenth Circuit's reasoning. As previously noted, neither Application Note 6 nor Application Note 10 to U.S.S.G. § 4A1.2 actually addresses how sentencing courts should view ongoing probationary terms that have been modified by state orders. Given the specificity with which these Application Notes dictate how courts should treat prior sentences, and that neither note addresses *nunc pro tunc* orders modifying ongoing probationary terms, much less the specific procedure enacted by the state of California, it is not clear why the Tenth Circuit thinks the "implication" of these notes is that the only previous convictions that the district court should not count are those that have been set aside because of a finding of innocence or legal error. Indeed, it is

equally reasonable to read the Application Notes to exclude ongoing probationary terms that have been shortened by state modification orders from the types of sentences that should be counted.

We are similarly unpersuaded by the Tenth Circuit's citation to the introductory commentary to Chapter 4. That commentary, which observes reasonably that defendants with prior criminal records are more culpable than those without, only supports refusing to credit these sorts of state court orders if we *begin* with the assumption that the probationary terms were ongoing at the times the defendants committed their federal offenses. In other words, the Tenth Circuit's reasoning is circular: district courts, the Tenth Circuit said, should not credit *nunc pro tunc* orders modifying ongoing probationary terms because doing so would prevent those courts from effectively punishing defendants who commit crimes while already on probation, and, the Tenth Circuit suggests, it is clear that these sorts of defendants were *on* probation when they committed their federal crimes because courts are not permitted to credit *nunc pro tunc* orders modifying ongoing probationary terms. If we begin with the opposite assumption, that due to the operation of the California state court orders the defendants were *not* on probation at the times they committed their federal offenses, then their behavior is no longer the sort "the Guidelines are intended to capture, via an increase in criminal history points," *Pech-Aboytes*, 562 F.3d at 1240, namely: "the commission of a crime while under a probationary sentence," *id.*

Therefore, the Eighth Circuit's decision in *Martinez-Cortez* is distinguishable from these two appeals, and we, in any event, disagree with the Eighth Circuit's reasoning in that case and the Tenth Circuit's reasoning in *Pech-Aboytes*.

## IX.

[8] We are faced with two competing historical and legal realities: on the one hand, it is surely true that, at the times

Acosta-Montes and Yepez committed their federal offenses, the state of California viewed them as being on probation; it is equally true that, under the California statute, neither of them *was* in fact on probation at those times. Nothing in the Guidelines, or in the cases cited by the parties, clearly indicates which of these realities should trump the other for the purposes of applying the sentencing safety valve. Ultimately, respecting "the fundamental principles of federalism and deference owed by federal courts to state courts in processing their own criminal cases," *Martinez-Cortez*, 354 F.3d at 833 (Lay, J., dissenting), and acknowledging that the "federal system relies heavily on state courts in sentencing defendants and it's wrong and pernicious to call these judgments into question because the state judges may have taken into account the effects on federal sentencing," *Alba-Flores*, 577 F.3d at 1112 (Kozinski, C.J., dissenting), we hold that, in applying the sentencing safety valve, federal courts must credit the California state orders under § 1203.3 modifying or terminating ongoing probationary terms. This holding not only reinforces the principle of comity, but also provides federal district courts with the additional sentencing discretion that both of the sentencing courts in these cases desired. Accordingly, we affirm Acosta-Montes's sentence, vacate Yepez's sentence, and remand Yepez's case for resentencing.

Appeal No. 09-50271: **VACATED and REMANDED.**

Appeal No. 09-50409: **AFFIRMED.**

---

TIMLIN, Senior District Judge, dissenting:

I respectfully dissent. This circuit treats "reasoning central to a panel's decision as binding later panels." *Garcia v. Holder*, 621 F.3d 906, 911 (9th Cir. 2010). "[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a pub-

lished opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense." *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (quoting *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) (Kozinski, J., concurring)).

I would hold that *United States v. Alba-Flores*, 577 F.3d 1104 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 3344 (2010), controls here in both *Yepez* and *Acosta-Montes*.[1] The *Alba-Flores* panel held that, because the defendant was serving a sentence of probation of more than one year at the time he committed his federal offense, he was properly assigned two criminal history points pursuant to U.S.S.G. § 4A1.1(d) and was disqualified from obtaining safety valve relief from the mandatory minimum sentence. 577 F.3d at 1111. The Court reached that holding by concluding that the concrete fact that the defendant was serving a sentence of probation of more than one year at the time of his federal offense was not altered by a state court's subsequent *nunc pro tunc* order shortening his term of probation to less than one year:

> [It is a] concrete fact that he *was* "under [a] criminal justice sentence" [pursuant to U.S.S.G. § 4A1.1(d)] when he committed his federal offense. The later state court order could not change that concrete fact. It is the actual situation at that precise point in time, not the situation at some earlier or later point that controls. . . . [T]he proper inquiry is whether Alba-Flores was actually under a "criminal justice sentence" when he committed the offense at hand. He was.

---

[1] I concur with the majority's holding that Yepez did not waive his right to appeal imposition of the mandatory minimum sentence by the District Court because the provision in the plea agreement concerning waiver of appeal as to the sentence was ambiguous as discussed in footnote 3 of the majority opinion.

*Id. Alba-Flores* thus followed the Eighth and Tenth Circuits in "eschew[ing] the notion that a state court could affect federal sentencing by issuing a nunc pro tunc order after the concrete facts pertinent to the federal sentencing were already in place." *Id.* at 1110-11 (discussing *United States v. Martinez-Cortez*, 354 F.3d 830 (8th Cir. 2004) and *United States v. Pech-Aboytes*, 562 F.3d 1234 (10th Cir. 2009)).

That issue was germane to the resolution of the case and was resolved after reasoned consideration. Accordingly, I believe *Alba-Flores* controls here.

Nor do I find persuasive the majority's reliance on principles of comity and federalism. The conduct in these cases by trial counsel for Yepez and Acosta-Montes reeks of the "same odor of gaming the federal sentencing system" that Judge Fernandez noted in *Alba-Flores*. 577 F.3d at 1111. After pleading guilty in federal court to importing methamphetamine in violation of federal law, Yepez and Acosta-Montes filed motions with the state court that unabashedly sought *nunc pro tunc* termination of their probation for the explicit purpose of changing the outcome of their upcoming federal sentencings.[2] Without explanation, the motions were granted.[3]

---

[2]The majority uses frequently in its opinion the term "modification" or "modify" regarding the state courts' *nunc pro tunc* orders although it is clear from the record that the state courts "terminated" probation *nunc pro tunc*. Other panels have similarly used the term "modification" as including the "termination" of probation, *i.e.*, state courts supervising probation may modify probation by terminating it. *See Butler v. Curry*, 528 F.3d 624, 646 (9th Cir. 2008) ("Under California probation law, . . . a judge retains the authority to modify the terms of an individual's probation at any time, including terminating probation early . . ."). I, however, view "modification" to be conceptually different from "termination" with potentially different legal ramifications. *Compare* Black's Law Dictionary 1609 (9th ed. 2009) (defining "termination" as "[t]he act of ending something") *with id.* at 1095 (defining "modification" as "[a] change to something; an alteration"). For that reason, I will use the terms "termination" or "terminate" instead of "modification" or "modify."

[3]I note that neither order terminating probation actually refers to California Penal Code § 1203.3. As the majority does, I will consider for purposes of my dissent the orders as made pursuant to § 1203.3.

The majority here attempts to mask the odor of gamesman-ship with a novel conception of the relationship between fed-eral and state courts. As the majority correctly notes, federal courts should generally avoid interfering with state court pro-ceedings. *See Younger v. Harris*, 401 U.S. 37, 44 (1971). But it is also clear that state courts should generally avoid interfer-ing with federal court proceedings. *See Garamendi v. Execu-tive Life Ins. Co.*, 21 Cal. Rptr. 2d 578, 590 n.20 (Cal. Ct. App. 1993) ("Early in the history of our federal system, a gen-eral rule was established that state and federal courts should not interfere with or restrain each other's proceeding." (citing *Donovan v. Dallas*, 377 U.S. 408, 412 (1964))); *see also Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970) ("[S]ome federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.").

The troubling effect of the majority's holding is that, where convicted federal defendants are facing imposition of federal statutory mandatory minimum sentences in upcoming sen-tencing proceedings in federal court, it is a state court that will decide whether imposing that mandatory minimum is appro-priate. See Maj. Op. at 9496 ("[B]ecause the **state supervis-ing judges** are aware of the implications of modification orders in federal sentence[s], **where they believe** the manda-tory minimum is warranted [for the federal crime] they would be unlikely to grant a request for such an order." (emphasis added)). How the state court makes a fully informed decision on whether imposing the mandatory minimum is warranted for the defendant's federal crime is unclear given that federal prosecutors may not be able to participate in the state court proceeding. *See Martinez-Cortez*, 354 F.3d at 834 (Lay, J., dissenting) ("I seriously question whether a federal prosecutor would have standing in the state court to contest a prior state conviction."). Nonetheless, if the state court decides that the "ends of justice," *see* Cal. Penal Code § 1203.3(a), are served

in its view by enabling the defendant to avoid the imposition of a federal mandatory minimum sentence, that state court can change retroactively by a *nunc pro tunc* order the facts applicable to the defendant's upcoming federal sentencing.[4]

To state it somewhat differently, the majority in effect has by judicial fiat created an exception to one of five criteria established by Congress and the President for the federal statutory exception to a mandatory minimum sentence of imprisonment for certain drug offenses, *i.e.*, that a defendant's criminal history may not exceed one point under 18 U.S.C. § 3553(f). The majority opines that a state court may exercise its broad discretion authorized by state statute, *i.e.*, Cal. Penal Code § 1203.3, to directly affect the application of federal sentencing law by causing a federal defendant convicted of a serious federal offense not to be subject to the sentence provided by Congress and the President.

Comity does not require us to allow federal policy determinations regarding the punishment for federal crimes be trumped by a state court's perspective on whether justice is served by the imposition of a mandatory minimum sentence in a federal case.[5] It is simply not a state court's prerogative

---

[4]*Nunc pro tunc* orders are generally limited to correcting clerical errors. *People v. Borja*, 115 Cal. Rptr. 2d 728, 731 (Cal. Ct. App. 2002). Such orders simply correct the record to properly reflect the court's original intentions at the time the earlier order was entered. *See Singh v. Mukasey*, 533 F.3d 1103, 1110 (9th Cir. 2008) (quoting *United States v. Sumner*, 226 F.3d 1005, 1009-10 (9th Cir. 2000)). The *nunc pro tunc* orders here were not sought to correct clerical errors so as to properly reflect the state court's original intention when it set the term of probation. The orders were sought in an attempt to retroactively change the fact that Yepez and Acosta-Montes were under a criminal justice sentence of probation when they committed the federal drug offenses for which they were awaiting sentencing.

[5]The majority's understanding of comity is contrary to those cases that actually involve analogous circumstances to those here, all of which reject the contention that state courts may alter the outcome of a federal sentenc-

to decide whether a mandatory minimum sentence is appropriate for a convicted federal defendant awaiting his federal sentencing. Like the majority in *Alba-Flores*, I would eschew the notion that state courts can affect federal sentencing by issuing *nunc pro tunc* orders after the concrete facts pertinent to the federal sentencing are already in place.

Finally, the majority extols that its holding "not only reinforces the principle of comity, but also provides federal district courts with the additional sentencing discretion that both of the sentencing courts in these cases desired." Maj. Op. at 9510. I question whether this Court has the authority to issue a holding for the purpose of providing district courts with additional sentencing discretion that it believes certain judges desire for considering whether a mandatory minimum sentence is appropriate. Congress and the President promulgate by statute the sentences for federal offenses. It is my view that when Congress and the President also provide that certain sentences shall include a mandatory minimum length, the judiciary as the Third Branch must apply that mandatory minimum. It is not the role of the judiciary to carve out exceptions in individual cases that give the district court additional discretion notwithstanding an applicable mandatory minimum.

Accordingly, I would affirm the District Court's sentence in *Yepez* and would reverse the District Court's sentence in *Acosta-Montes*, ordering that case remanded for resentencing.

---

ing by issuing *nunc pro tunc* orders after the federal crime was committed. *See Alba-Flores*, 577 F.3d at 1110-11; *Martinez-Cortez*, 354 F.3d at 832-33; *Pech-Aboytes*, 562 F.3d at 1240. On the other hand, the holdings of the cases relied upon by the majority are far afield from the situation we face here. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980) (holding that in federal § 1983 actions federal courts must give preclusive effect to state court judgments if the courts from that state would do so); *Younger*, 401 U.S. at 54 (holding that, absent unusual circumstances, federal courts should not enjoin pending state criminal prosecutions); *Taylor v. Maddox*, 366 F.3d 992, 999, 1018 (9th Cir. 2004) (holding that state prisoner was entitled to habeas relief).