**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>DAVID YEPEZ,<br>*Defendant-Appellant*. | No. 09-50271<br><br>D.C. No.<br>3:08-cr-03499-<br>LAB-1 |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff - Appellant*,<br><br>v.<br><br>AUDENAGO ACOSTA-MONTES,<br>*Defendant - Appellee*. | No. 09-50409<br><br>D.C. No.<br>3:08-cr-02350-<br>L-1<br><br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, Senior District Judge, Presiding

Argued and Submitted En Banc
June 21, 2012—Pasadena, California

Filed December 20, 2012

Before: Alex Kozinski, Chief Judge, Harry Pregerson, Stephen Reinhardt, Sidney R. Thomas, Susan P. Graber, Kim McLane Wardlaw, William A. Fletcher, Ronald M. Gould, Johnnie B. Rawlinson, Consuelo M. Callahan, and Milan D. Smith, Jr., Circuit Judges.

Per Curiam Opinion;
Dissent by Judge Wardlaw

**SUMMARY**[*]

**Criminal Law**

Affirming one defendant's federal drug sentence and vacating another, the en banc court held that a state court's order terminating a defendant's probation for a state offense "nunc pro tunc" as of the day before the defendant committed his federal crime cannot alter the fact that the defendant had the status of probationer when he committed his federal crime.

The en banc court concluded that the defendants therefore remained ineligible for safety valve relief under 18 U.S.C. § 3553(f) from the mandatory minimum sentence because they were properly assessed two criminal history points pursuant to U.S.S.G. § 4A1.1(d) for committing the federal

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

crime "while under any criminal justice sentence, including probation."

Dissenting, Judge Wardlaw (joined by Judges Pregerson, Reinhardt, Thomas, and W. Fletcher) wrote that because neither Congress, the safety valve provision, nor the Sentencing Guidelines address this question, fundamental principles of justice, federalism, and comity, as well as the rule of lenity and the parsimony principle of 18 U.S.C. § 3553(a), permit district courts to exercise their broad sentencing discretion when calculating criminal history scores for purposes of safety valve relief, and then to exercise that same discretion in determining the appropriate sentence length.

## COUNSEL

Karen P. Hewitt, United States Attorney, Bruce R. Castetter, Assistant U.S. Attorney, Chief, Appellate Section Criminal Division, and Timothy C. Perry, Assistant U.S. Attorney, Office of the U.S. Attorney for the Southern District of California, San Diego, California, for Appellee United States.

Michael Edmund Burke, San Diego, California, for Appellant David Yepez.

Karen P. Hewitt, United States Attorney, Bruce R. Castetter, Assistant U.S. Attorney, Chief, Appellate Section Criminal Division, and Kyle W. Hoffman and Rebecca Suzanne Kanter, Assistant U.S. Attorneys, Office of the U.S. Attorney for the Southern District of California, San Diego, California, for Appellant United States.

Vincent James Brunkow, Assistant Appellate Supervisor, Federal Defenders of San Diego, Inc., San Diego, California, for Appellee Audenago Acosta-Montes.

**OPINION**

PER CURIAM:

**1.** David Yepez and Audenago Acosta-Montes's cases are variations on the same theme. Both were arrested crossing into the United States from Mexico while carrying enough methamphetamine to trigger a ten-year mandatory minimum sentence. Each pled guilty to one count of importing methamphetamine.

After the pleas, but before sentencing, they learned that they were ineligible for relief under the Mandatory Minimum Sentencing Reform Act's "safety valve" provision. *See* 18 U.S.C. § 3553(f); *United States* v. *Shrestha*, 86 F.3d 935, 938 (9th Cir. 1996). The safety valve allows "the sentencing court to disregard the statutory minimum in sentencing first-time nonviolent drug offenders who played a minor role in the offense and who have made a good-faith effort to cooperate with the government." *Shrestha*, 86 F.3d at 938 (internal quotation marks omitted); *see also United States* v. *Wipf*, 620 F.3d 1168, 1170 (9th Cir. 2010).[1]  Safety valve

---

[1] *Wipf* rejects Acosta-Montes's argument that the "parsimony principle" contained in 18 U.S.C. § 3553(a) (i.e., that district courts shall "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing) permitted the district judge to give him a sentence below the mandatory minimum, even if he isn't eligible for safety valve relief. *See Wipf*, 620 F.3d at 1170–71. We see no reason to revisit *Wipf*.

relief is a tempting carrot for drug mules who are facing a mandatory minimum but, to trigger it, they must show that they meet five requirements. 18 U.S.C. § 3553(f); *see also United States* v. *Alba-Flores*, 577 F.3d 1104, 1107 (9th Cir. 2009).

Yepez and Acosta-Montes's problem is that one of these requirements is that a defendant "not have more than 1 criminal history point, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1). The Guidelines assign two criminal history points to defendants who commit a federal crime "while under any criminal justice sentence, including probation." U.S. Sentencing Guidelines Manual § 4A1.1(d). When they were arrested for carrying drugs into the United States, both were on probation for relatively minor state crimes—Yepez for a DUI, Acosta-Montes for shoplifting.

And here is where it gets interesting: Prior to being sentenced by the district court, each man convinced a state court to terminate his probation "nunc pro tunc" as of the day before he committed his federal crime. *See* Cal. Penal Code § 1203.3(a) ("The court shall have authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence."). Yepez and Acosta-Montes argue that their nunc pro tunc orders effectively changed history, so that they were no longer on state probation at the time they committed their federal crimes and were, therefore, eligible for safety valve relief.

Yepez's district judge rejected this argument, and imposed the mandatory minimum sentence. Acosta-Montes's judge accepted it, and gave him a sentence below the

mandatory minimum.  We affirm in one case and reverse in the other.**²**

**2.**    The Guidelines assign a defendant two criminal history points if he "committed [a federal] offense *while* under any criminal justice sentence, including probation." U.S. Sentencing Guidelines Manual § 4A1.1(d) (emphasis added).   By its plain language, the provision looks to a defendant's status at the time he commits the federal crime. Yepez was on probation *while* he was arrested for importing methamphetamine on September 16, 2008, and had been for over a year.  Acosta-Montes was on probation *while* he was arrested on May 7, 2008, and had been for almost two years. That a state court later deemed the probation terminated before the federal crime was committed can have no effect on a defendant's status at the moment he committed the federal crime.  That termination may have beneficial consequences for the defendant under state law, but a court cannot alter the historical fact that the defendant had the status of probationer when he committed his federal crime.

*United States* v. *Mejia*, 559 F.3d 1113 (9th Cir. 2009), is not to the contrary.  The state court order terminating the defendant's probation in that case was issued years before he committed the federal crime at issue.  *Id.* at 1116, 1119.  He was therefore no longer under a criminal justice sentence.

In *United States* v. *Alba-Flores*, 577 F.3d at 1111, we held that, when determining whether a federal defendant is under a criminal justice sentence, "[i]t is the actual situation

---

**²** Because we affirm Yepez's sentence, we need not reach the government's argument that, under the terms of his plea bargain, he waived his right to appeal his sentence.

at th[e] precise point in time" that the crime was committed and "not the situation at some earlier or later point that controls." Even the dissent there agreed that the majority's holding might have been correct, had the state court retroactively shortened Alba-Flores's probation. *Id.* at 1112 (Kozinski, C.J., dissenting). Accepting Alba-Flores's argument wouldn't have required a federal court to pretend that the defendant had served less than a year when he actually had served more than a year.

The overall statutory scheme lends further support to our reading of subsection 4A1.1(d). *See* U.S. Sentencing Guidelines Manual § 4A1.1 cmt. ("§§ 4A1.1 and 4A1.2 must be read together."). Section 4A1.2 *does* permit district courts to ignore certain types of previously imposed sentences when calculating criminal history. For example, "[s]entences for expunged convictions are not counted." § 4A1.2(j). Neither are "[s]entences resulting from foreign convictions," nor those that result from "tribal court convictions." § 4A1.2(h)–(i). The application notes provide that sentences based on convictions that have been ruled constitutionally invalid or that have been reversed or vacated due to errors of law or the defendant's innocence are also not to be counted. § 4A1.2 cmt. n.6.

The Guidelines's drafters were thus aware that it was possible for subsequent events to supersede previously imposed sentences. But nothing in the Guidelines or its application notes carves out an exception for probationary sentences that are terminated nunc pro tunc by a state court order. Even when a *conviction* is set aside for "reasons unrelated to innocence or errors of law," we still count the resulting sentence. § 4A1.2 cmt. n.10; *see also United States* v. *Hayden*, 255 F.3d 768, 770–74 (9th Cir. 2001). And the

application notes state expressly that "[p]rior sentences, not otherwise excluded, are to be counted in the criminal history score." § 4A1.2 cmt. background note; *cf.* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012) (discussing expressio unius canon). Because Yepez and Acosta-Montes cannot point to a provision indicating that their sentences aren't to be counted, we must infer that they are.

Our sister circuits that have considered the issue of whether to count a probationary sentence that was terminated nunc pro tunc by a state court "for the sole purpose of obtaining favorable federal sentencing consequences," *United States* v. *Martinez-Cortez*, 354 F.3d 830, 832 (8th Cir. 2004), have reached a similar conclusion. The Eighth Circuit observed that if a defendant's "convictions had been vacated for the express purpose of enabling him to become eligible for the safety valve, the sentences would have counted because the convictions would have been set aside for reasons unrelated to his innocence or errors of law." *Id.* Thus, the "lesser step of modifying his sentences . . . for reasons unrelated to his innocence or errors of law is not a valid basis for not counting the sentences." *Id.* And the Tenth Circuit noted that "the Guidelines are intended to capture, via an increase in criminal history points, the very behavior [the defendant] was attempting to avoid: the commission of a crime while under a probationary sentence." *United States* v. *Pech-Aboytes*, 562 F.3d 1234, 1240 (10th Cir. 2009); *see also Alba-Flores*, 577 F.3d at 1110 (majority opinion).

The three-judge panel that originally decided this case reached the opposite conclusion, largely based on principles of comity. *See, e.g.*, *Younger* v. *Harris*, 401 U.S. 37, 44 (1971). We acknowledge that "[p]rinciples of comity and

federalism counsel against substituting our judgment for that of the state courts." *Taylor* v. *Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Alba-Flores*, 577 F.3d at 1112 (Kozinski, C.J., dissenting). But granting a state court the power to determine whether a federal defendant is eligible for safety valve relief under the Federal Sentencing Guidelines is closer to abdication than comity. "In our American system of dual sovereignty, each sovereign—whether the Federal Government or a State—is responsible for the administration of its own criminal justice system." *Setser* v. *United States*, 132 S. Ct. 1463, 1471 (2012) (internal quotation marks and alterations omitted); *see also Taylor* v. *Sawyer*, 284 F.3d 1143, 1151 (9th Cir. 2002). State courts cannot be given the authority to change a defendant's federal sentence by issuing a ruling that alters history and the underlying facts.

The safety valve is a narrow exception to the statutory regime established by the Mandatory Minimum Sentencing Reform Act. As Judge Timlin noted in his dissent from the original panel opinion, crediting the state court's retroactive termination of Yepez and Acosta-Montes's probation sentences would "create[] an exception to one of five [safety valve] criteria established by Congress and the President" by "judicial fiat."

Yepez's sentence is **AFFIRMED**. Acosta-Montes's sentence is **VACATED**, and his case is remanded for imposition of a sentence consistent with this opinion.

WARDLAW, Circuit Judge, joined by PREGERSON, REINHARDT, THOMAS, and W. FLETCHER, Circuit Judges, dissenting:

## I.

"[C]omity between state and federal courts . . . has been recognized as a bulwark of the federal system." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). California Penal Code § 1203.3 permits state judges who are supervising individuals placed on state probation to terminate retroactively the terms of probation to which they had previously sentenced those defendants. Each of the defendants in these consolidated appeals was serving such a probationary sentence when he committed and pleaded guilty to the charge of smuggling methamphetamine into the United States. Before sentencing on the federal charge, however, each defendant obtained a modification order pursuant to California Penal Code § 1203.3 that retroactively terminated his state-court probationary sentence as of the day before he committed his federal crime. Each filed a motion that expressly argued to the state judge supervising him that failure to terminate the state probationary term would substantially increase his federal sentencing exposure by rendering him ineligible for safety valve relief from the otherwise applicable ten-year statutory mandatory minimum. Though each federal district court judge observed that the mandatory minimum sentence was grossly excessive, the judge in Acosta-Montes's case deferred to the state court's nunc pro tunc[1] termination of

---

[1] "Nunc pro tunc" literally means "now for then," and is "used in reference to an act to show that it has retroactive legal effect." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 607 (2d ed. 1995). The

probation in calculating his criminal history scores while the judge in Yepez's case did not.  Before us is the question whether, given the California state courts' wide latitude to modify ongoing probationary terms under California state law, the federal district courts in calculating criminal history points for purposes of safety valve eligibility may credit state orders retroactively terminating probationary sentences. Because neither Congress, the safety valve provision, 18 U.S.C. § 3553(f), nor the Sentencing Guidelines themselves address this question, I submit that fundamental principles of justice, federalism, and comity, as well as the rule of lenity and the parsimony principle of 18 U.S.C. § 3553(a), permit district courts to exercise their broad sentencing discretion when calculating criminal history scores for purposes of safety valve relief, and then to exercise that same discretion in determining the appropriate sentence length.

## A.  David Yepez

On July 18, 2007, David Yepez, who was then just over eighteen years old, pleaded guilty in California state court to driving under the influence of alcohol ("DUI") in violation of California Vehicle Code § 23152(b), and was placed on probation, initially for a period of three years.  On September 16, 2008, Yepez, then just over twenty years old, tried to enter the United States from Mexico while driving a vehicle containing more than seven kilograms of methamphetamine. After his arrest, Yepez explained that he needed money and

---

term signifies that "a thing is done now, which shall have same legal force and effect as if done at time when it ought to have been done."  *United States v. Allen*, 153 F.3d 1037, 1044 (9th Cir. 1998) (quoting Black's Law Dictionary 964 (5th ed. 1979)).

had agreed to smuggle what he believed to be marijuana. As the district court later found, crediting the border agents' testimony as to Yepez's demeanor, Yepez was "shocked" to discover that the "marijuana" was in fact methamphetamine.[2] On November 4, 2008, pursuant to a plea agreement, Yepez pleaded guilty before a magistrate judge to one count of importing methamphetamine in violation of 21 U.S.C. §§ 952 and 960. Yepez acknowledged that he was subject to the ten-year statutory minimum term of imprisonment, and waived his right to appeal "unless the Court imposes a custodial sentence above the greater of the high end of the guideline range recommended by the Government pursuant to this agreement at the time of sentencing or statutory mandatory minimum term, if applicable."

In its February 17, 2009, Presentence Investigation Report ("PSR"), the United States Probation Office concluded that Yepez was ineligible for safety valve relief under 18 U.S.C. § 3553(f). The Probation Office assigned two criminal history points under U.S.S.G. § 4A1.1(d) for Yepez's commission of the offense while on probation for his 2007 DUI conviction, and therefore recommended the ten-year mandatory minimum sentence. While the government agreed with the recommendation, it noted that it would have recommended a sentence of 57 months had Yepez qualified for safety valve relief. Following disclosure of the PSR, Yepez moved for nunc pro tunc termination of probation under California Penal Code § 1203.3. On April 22, 2009, the state judge supervising his probation ordered Yepez's ongoing probation terminated as of September 15, 2008, the

---

[2] The district court observed that "someone who is younger, particularly 18, 19 years old, who hasn't had the full set of experiences yet is more apt to make mistakes of this type."

day before Yepez committed his federal offense. State prosecutors did not appeal from this order.

At his May 18, 2009 federal sentencing hearing, Yepez objected to the sentencing recommendation, arguing that the state-court nunc pro tunc order made him eligible for safety valve relief because by operation of state law he was *not* on probation when he committed his federal offense, so he did not have "more than 1 criminal history point." 18 U.S.C. § 3553(f)(1). The government argued that the state court could not rewrite the historical fact that, at the time of the federal offense, Yepez had been on state probation. The district court imposed the mandatory minimum sentence of 120 months imprisonment despite its view that a 63 month sentence of imprisonment was the appropriate sentence. The court stated, "I wouldn't give Mr. Yepez a 10-year sentence if it was up to me, if I had discretion. Wouldn't do it. I think that's disproportionate given his background, but that's not what's at issue. . . . I don't like it. I really don't like it. . . . I have imposed [this sentence] because I felt like I had to. That's the only reason."

## B. Audenago Acosta-Montes

In 2006, Audenago Acosta-Montes, a lawful permanent resident, was convicted in California state court of one count of misdemeanor theft for shoplifting from a Target store, and was sentenced to one day in county jail and three years of probation. On May 7, 2008, Acosta-Montes attempted to enter the United States near San Ysidro, California, while driving a pickup truck containing approximately 3.30 kilograms of methamphetamine. On October 2, 2008, pursuant to a plea agreement, Acosta-Montes pleaded guilty

to one count of importation of methamphetamine in violation of 21 U.S.C. §§ 952 and 960.

The Probation Office concluded that Acosta-Montes was ineligible for safety valve relief because when he committed the federal offense he remained on probation from his shoplifting conviction, and so had more than one criminal history point. The government accordingly recommended the ten-year statutory mandatory minimum term of imprisonment. Acosta-Montes sought and received a continuance of his sentencing date, and then moved in state court for an order retroactively terminating his probation to May 6, 2008, the day before he committed the federal offense. On April 1, 2009, the state court granted Acosta-Montes's motion over the state's opposition, and there was no appeal.

At Acosta-Montes's July 13, 2009 sentencing hearing, the district court credited the order modifying Acosta-Montes's ongoing probationary term, and concluded that Acosta-Montes was safety valve eligible. Responding to the government's objections, the district court stated that, being "brutally honest," it disagreed with "hamstringing a court with a mandatory minimum where facts don't deserve that." The court explained that, given the nature of Acosta-Montes's offense, the nonviolent nature of Acosta-Montes's criminal record, which consisted solely of misdemeanor offenses, and Acosta-Montes's personal circumstances, a ten-year term of imprisonment was far too high. "The defendant isn't free of criminal conduct," the court observed, "but he has been a productive worker that has provided for his family and children." The court imposed a sentence of imprisonment of 46 months.

## II.

The government appealed Acosta-Montes's below-mandatory minimum sentence. Yepez also appealed his sentence, arguing that the district court erred in declining to give effect to the state court's nunc pro tunc order. A divided three-judge panel of this court consolidated the two cases for the purposes of disposition and issued an opinion affirming Acosta-Montes's sentence and vacating Yepez's sentence. *United States v. Yepez*, 652 F.3d 1182, 1199 (9th Cir. 2011) (District Judge Timlin,[3] dissenting). Our panel decision got it right, but a majority of the active judges of our court voted to rehear the cases en banc, largely due to their potential conflict with *United States v. Alba-Flores*, 577 F.3d 1104 (9th Cir. 2009), which itself was inconsistent with *United States v. Mejia*, 559 F.3d 1113 (9th Cir. 2009).

Congress has set statutory minimum sentences for numerous drug crimes, but has also enacted a "safety valve," 18 U.S.C. § 3553(f), which permits courts to "disregard the statutory minimum in sentencing first-time nonviolent drug offenders who played a minor role in the offense and who 'have made a good-faith effort to cooperate with the government.'" *United States v. Shrestha*, 86 F.3d 935, 938 (9th Cir. 1996) (quoting *United States v. Arrington*, 73 F.3d 144, 147 (7th Cir. 1996)). The purpose of the safety valve is "to rectify an inequity in this system, whereby more culpable defendants who could provide the Government with new or useful information about drug sources fared better . . . than lower-level offenders, such as drug couriers or 'mules,' who typically have less knowledge." *Id*. Its legislative history

---

[3] The Honorable Robert J. Timlin, Senior United States District Judge for the Central District of California, sitting by designation.

provides, "Ironically, [ ] for the very offenders who most warrant proportionally lower sentences—offenders that by guideline definitions are the least culpable—mandatory minimums generally operate to block the sentence from reflecting mitigating factors."  *Id.* (citing H.R. Rep. No. 103-460, 103d Cong., 2d Sess., 1994 WL 107571 (1994)) (alteration in original).

> A defendant is eligible for the safety valve where:
>
> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided

to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).

In each of these appeals, there is no question that the defendants meet four of these five requirements, including truthful government cooperation; the only question is whether either of the defendants had more than one criminal history point "as determined under the Sentencing Guidelines." 18 U.S.C. § 3553(f)(1). Under the Guidelines, a defendant receives two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation . . . ." U.S.S.G. § 4A1.1(d). In other words, each defendant's eligibility for safety valve relief turns on whether he was on probation when he committed his federal offense.

### III.

As the California courts have regularly and routinely recognized for a century, courts in California retain and exercise very broad supervisory authority over ongoing probationary terms. *See, e.g.*, *People v. Howard*, 946 P.2d 828, 835 (Cal. 1997); *People v. Carbajal*, 899 P.2d 67, 70 (Cal. 1995) (noting that state courts have "broad discretion to

determine whether an eligible defendant is suitable for probation and, if so, under what conditions") (citing Cal. Penal Code § 1203.1(b)); *People v. Cookson*, 820 P.2d 278, 281 (Cal. 1991) ("A court may revoke or modify a term of probation at any time before the expiration of that term. This power to modify includes the power to extend the probationary term.") (citation omitted); *People v. Lippner*, 26 P.2d 457, 458 (Cal. 1933) ("[T]he trial court is clothed with a wide discretion in the granting and revoking of the probation of a person convicted of crime."); *People v. Kwizera*, 93 Cal. Rptr. 2d 522, 523 (Ct. App. 2000) ("[T]he trial court has authority to empower the probation department with authority to supervise the probation conditions."); *In re Gonzales*, 118 Cal. Rptr. 69, 71 (Ct. App. 1974) ("A court is vested with continuing discretion to continue a defendant on probation or to revoke probation. The exercise of that discretion is a judicial power manifested through the judge's personal examination of the case before him . . . .") (citations omitted); *People v. Buford*, 117 Cal. Rptr. 333, 337 (Ct. App. 1974) ("Just as the Adult Authority has continuing jurisdiction over its parolees, so the court has continuing jurisdiction over its probationers.") (citations omitted); *People v. Brown*, 244 P.2d 702, 704 (Cal. Ct. App. 1952); *People v. O'Donnell*, 174 P. 102, 104 (Cal. Ct. App. 1918) ("The authority in a court to suspend a sentence or the execution thereof in a criminal case and liberating the defendant for a certain period is wholly statutory, and the statute itself furnishes the measure of the power which may thus be exercised.").

The "wholly statutory," *Howard*, 946 P.2d at 835, wide-ranging authority of California state courts to supervise—as well as to modify or revoke—ongoing probationary terms is

set forth in California Penal Code § 1203.3(a), which provides:

> The court shall have authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence. The court may at any time when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it, terminate the period of probation, and discharge the person so held.

The State recognizes the important role of probation in the criminal justice system. As the California Supreme Court has explained, "[a]n integral and important part of the penological plan of California is the discretionary retention in the trial court of jurisdiction over the defendant and the cause of action against him [or her] . . . by virtue of the probation procedures." *People v. Feyrer*, 226 P.3d 998, 1007 (Cal. 2010) (quoting *People v. Banks*, 348 P.2d 102, 111 (Cal. 1959)) (alteration in original). The California Supreme Court has also observed that a

> [g]rant of probation is, of course, qualitatively different from such traditional forms of punishment as fines or imprisonment. Probation is neither "punishment" nor a criminal "judgment." Instead, courts deem probation an act of clemency in lieu of punishment, and its primary purpose is rehabilitative in nature. . . .

> [T]he authority to grant probation and to suspend imposition or execution of sentence is wholly statutory. During the probationary period, the court retains jurisdiction over the defendant, and at any time during that period the court may, subject to statutory restrictions, modify the order suspending imposition or execution of sentence.

*Howard*, 946 P.2d at 835 (internal citations omitted).

California's probation statutes reflect the understanding that courts supervising probation will actually *supervise*, i.e., change the circumstances to serve the "ends of justice," *see, e.g.*, Cal. Penal Code § 1203.3, and terminate probation when warranted by the "good conduct and reform" of the supervised individuals. *Id.* The supervisory role of the state sentencing courts is highlighted by the state courts' recognition that authority under § 1203.3 immediately ends once the period of probation is over.[4]

The California trial courts' authority over ongoing terms of probation granted by California Penal Code § 1203.3 explicitly differs from the power that California has given its courts to set aside convictions under California Penal Code § 1203.4(a). Section 1203.4(a) governs only persons who

---

[4] The California Supreme Court has repeatedly observed: "The cases [concerning California Penal Code § 1203.3] have consistently taken the view announced in *People v. O'Donnell*, 174 P. 102, 104 (Cal. Ct. App. 1918), that . . . 'the court loses jurisdiction or power to make an order revoking or modifying the order suspending the imposition of sentence or the execution thereof and admitting the defendant to probation after the probationary period has expired.'" *In re Griffin*, 431 P.2d 625, 627 (Cal. 1967) (collecting cases).

have already completed probation or for whom probation has been terminated.  It provides that

> in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted
>
> . . . .

Cal. Penal Code § 1203.4(a).  Unlike § 1203.3, which grants courts authority over *ongoing* probationary terms, a "grant of relief under section 1203.4 is intended to reward an individual who successfully *completes probation* by mitigating some of the consequences of his conviction and, with a few exceptions, to restore him to his former status in society to the extent the Legislature has power to do so." *People v. Mgebrov*, 82 Cal. Rptr. 3d 778, 781 (Ct. App. 2008)

(emphasis added) (quoting *People v. Field*, 37 Cal. Rptr. 2d 803, 808 (Ct. App. 1995)).

## IV.

The majority's assertion that the state court judges who issued the nunc pro tunc orders here were attempting to "alter[] history and the underlying facts" is both incorrect and unseemly. The nunc pro tunc orders alter the legal status of the defendants as of the day before they committed their federal offense. The supervising judges knew what they were doing and why they were doing it—the goal was to permit the district court to render a just sentence by allowing it the discretion to engage in a full consideration of the § 3553(a) factors enacted by Congress.[5]    Far from eliminating a

---

[5] In imposing a sentence, 18 U.S.C. § 3553(a) requires: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>     (B) to afford adequate deterrence to criminal conduct;
>
>     (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and

(ii) that, except as provided in section 3742 (g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994 (a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28);

(5) any pertinent policy statement—

safety valve criterion by "judicial fiat," the state court judges simply recognized the heavy dependence of the federal sentencing scheme upon and interaction with state court sentencing regimes.

The majority opinion is animated by the fear that crediting the state court nunc pro tunc orders will usurp federal power by giving state courts "the authority to change a defendant's federal sentence." Yet, Yepez and Acosta-Montes did not forum-shop for sympathetic state judges willing to interfere with federal sentencing; each defendant filed his motion to terminate probation nunc pro tunc with the very court charged with supervising his probation under California's statutory scheme. Under § 1203.3, the state judges did not have *carte blanche* to modify the probationary terms at their whim. Instead, § 1203.3 sets forth a standard for the termination of probation: termination must serve "the ends of justice" and be warranted by the "good conduct and

---

(A) issued by the Sentencing Commission pursuant to section 994 (a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and

(B) that, except as provided in section 3742 (g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

reform of the person so held on probation." Cal. Penal Code § 1203.3(a). Yepez and Acosta-Montes were forthright in their state motion papers, and they explicitly informed their supervising judges about: 1) the guilty pleas entered in their federal criminal proceedings; and 2) the potential mandatory minimums each was facing in federal court. Provided with information about how the individuals they were supervising could be federally sentenced in the absence of termination orders, the state court judges applied California law and determined that the requirements of § 1203.3(a) were satisfied. If those state judges were of the view that either Yepez or Acosta-Montes was not in "good conduct" or had not "reformed" within the meaning of California law, they certainly had within their power the ability to deny the motions.

Although Yepez's and Acosta-Montes's state court judges were "mindful of the federal implications of their sentences," the majority is "wrong to cast aspersions on this salutary practice." *Alba-Flores*, 577 F.3d at 1112 (Kozinski, C.J., dissenting). Indeed, the entire concept of calculating criminal history points is predicated on respect for and deference to state court criminal proceedings; the system would unravel if district courts were to second-guess the motives of every state court judge who had previously convicted or sentenced a defendant.[6] We have previously stated that "the Guidelines

---

[6] The Guidelines and federal statutes regularly rely on state court determinations of a defendant's guilt or criminal status in determining whether to impose enhanced penalties. *See, e.g.*, 18 U.S.C. § 924(e)(2) (defining "serious drug offense" to include qualifying offenses "under State law"); 18 U.S.C. § 924(g) (providing for enhanced penalty for any individual who transports firearms and also "violates any state law relating to any controlled substance"); U.S.S.G. § 4A1.2(c) (including under relevant "Sentences Counted" any "violations under state criminal law"

are concerned only with the state court's final determination, not with the soundness of its reasoning." *United States v. Guthrie*, 931 F.2d 564, 572 (9th Cir. 1991). In *Mejia*, for instance, it is entirely possible that the state judge who terminated Mejia's probation just three days after it was imposed did so solely because of concerns about collateral federal sentencing consequences. Yet the panel saw no reason to question the motives of the judge overseeing Mejia's probation. *See Mejia*, 559 F.3d at 1116. The majority's categorical rule creates a sharp distinction between state court sentencing orders issued prior to the commission of a federal offense, as to which a presumption of validity applies, and those issued after commission of a federal offense, which federal judges must now ignore.

Permitting district courts to credit state court orders retroactively modifying probationary sentences does not somehow allow state courts to usurp the sentencing power of the federal judiciary. Quite the opposite is true. Allowing federal courts the discretion to credit such orders enhances the sentencing discretion of federal judges. In sentencing Yepez and Acosta-Montes, both district judges repeatedly expressed their frustration with the criminal history calculations that eliminated eligibility for otherwise justified safety valve relief. All such a rule does is make room for district courts facing similar cases to impose individualized sentences consistent with the principles set forth in 18 U.S.C. § 3553(a), rather than compelling judges, against their better judgment, to impose sentences they find grossly excessive.

---

in determining whether to impose a sentence enhancement); U.S.S.G. § 4A1.2(o) (defining a "felony offense" as "any federal, state, or local offense" for sentence enhancement purposes); U.S.S.G. § 4B1.2(a) (defining "crime of violence" as "any offense under federal or state law").

**V.**

As a threshold matter, it is clear that giving effect to the state court orders does not interfere with the will of Congress, and in fact is consistent with the principles Congress enacted to govern sentencing. In determining eligibility for safety valve relief, Congress explicitly relied on the Sentencing Guidelines for the calculation of the criminal history points. 18 U.S.C. § 3553(f). The Guidelines, in turn, instruct that judges look to state laws and state court rulings to determine whether a defendant is serving a sentence under state law. *See* U.S.S.G. § 4A1.1 cmt. n.5 ("Prior convictions may represent convictions in the . . . fifty state systems . . . ."); *Alba-Flores*, 577 F.3d at 1112 (Kozinski, C.J., dissenting) ("The federal system relies heavily on state courts in sentencing defendants. . . ."); *United States v. Mendoza-Morales*, 347 F.3d 772, 775 (9th Cir. 2003) (counting a state sentence as a "prior sentence of imprisonment" for Guidelines purposes). Given this framework, it is clear that Congress has premised the availability of safety valve relief on state law. Thus, the only real question in these cases is whether nunc pro tunc orders are authorized under California law. If they are, then giving effect to them is, by definition, consistent with the will of Congress.

The Sentencing Commission did not address whether or how to count a term of probation that was terminated pursuant to state law. While Application Notes 6 and 10 address circumstances under which certain prior *convictions* should not be counted for the purposes of arriving at a Guidelines sentence, neither Note says anything about how courts should count ongoing probationary terms modified or retroactively terminated by state court orders, nor does any other Application Note speak to this issue.

According to Application Note 6, which concerns "Reversed, Vacated, or Invalidated Convictions":

> Sentences resulting from *convictions* that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted. With respect to the current sentencing proceeding, this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law (e.g., 21 U.S.C. § 851 expressly provides that a defendant may collaterally attack certain prior convictions).

U.S.S.G. § 4A1.2 cmt. n.6 (2010) (emphasis added). Application Note 10, which concerns "Convictions Set Aside or Defendant Pardoned," states:

> A number of jurisdictions have various procedures pursuant to which previous *convictions* may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted.     However, expunged convictions are not counted. § 4A1.2(j).

U.S.S.G. § 4A1.2 cmt. n.10 (2010) (emphasis added).

Although the Guidelines themselves are advisory only, the applicable Guidelines sentence must be calculated correctly. *See, e.g.*, *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). Commentary in the Application Notes interpreting or explaining a guideline "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993); *see also United States v. Bays*, 589 F.3d 1035, 1037 (9th Cir. 2009). Neither of these two Application Notes, however, addresses how sentencing courts are to apply state trial court orders that retroactively modify or terminate ongoing probationary terms. The state court orders concerning Yepez and Acosta-Montes did not set aside, expunge, reverse, vacate, or invalidate their convictions, nor did they pardon the defendants. As Judge Lay of the Eighth Circuit has observed:

> There is no question that the state court's modification of the probationary terms did not "expunge" [the defendant's] convictions. Similarly, there is no question that the modification of the probationary sentence did not "set aside" the state court convictions. Application Note 10 simply does not address the modification of a prior sentence and is therefore not controlling.

*United States v. Martinez-Cortez*, 354 F.3d 830, 834 (8th Cir. 2004) (Lay, J., dissenting).

The majority also points us to the introductory commentary to the criminal history section of Chapter 4 of the Sentencing Guidelines, which recognizes that "[a] defendant with a record of prior criminal behavior is more

culpable than a first offender and thus deserving of greater punishment," U.S.S.G. § 4A intro. cmt. (2010), to support its view that Yepez and Acosta-Montes's now terminated probationary sentences render them more culpable than a first-time offender, and thus more deserving of a harsh mandatory minimum sentence. While the commentary sets forth a reasonable general principle, it is not particularly apt here, where the state courts terminated probation precisely because the probationary sentence did not render Yepez and Acosta-Montes "more culpable." Indeed, the Commentary supports refusing to credit these sorts of state court orders only if we *begin* with the assumption that the probationary terms were ongoing at the times the defendants committed their federal offenses. The majority's reasoning is circular: district courts should not credit nunc pro tunc orders modifying ongoing probationary terms because doing so would prevent those courts from effectively punishing defendants who commit crimes while already on probation, and it is clear that these sorts of defendants were *on* probation when they committed their federal crimes because courts are not permitted to credit nunc pro tunc orders modifying ongoing probationary terms. If we begin instead with the opposite assumption, that due to the operation of the California state court orders the defendants were *not* on probation at the times they committed their federal offenses, then they are not any more culpable than a defendant with only one criminal history point. And, because a California state supervising trial judge may legally modify or terminate probation only when he finds that "the good conduct and reform of the person" warrants it, we should instead start with the premise that the defendant is not as culpable as other defendants, who are serving ongoing probationary terms that have not been terminated. Cal. Penal Code § 1203.3(a).

While the Application Notes do not directly address the situation before us, at least one Application Note in the Commentary undercuts the government's argument, implicitly adopted by the majority, that, in calculating criminal history under the Guidelines, judges should take a "snapshot" of the situation at the exact moment the federal offense is committed, and should not allow that snapshot to be "photoshopped" later. Under that theory, courts applying the Guidelines should disregard what occurs *after* the commission of the federal offense but before sentencing for that offense. Application Note 1 expressly directs district courts to consider post-commission sentences when sentencing, which certainly will have altered the "snapshot" taken on the day the offense was committed:

> "Prior sentence" means a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense. *See* §4A1.2(a). A sentence imposed *after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense*, is a prior sentence if it was for conduct other than conduct that was part of the instant offense.

U.S.S.G. § 4A1.2 cmt. n.1 (2010) (emphasis added). In other words, in counting "prior sentences," courts are required to count at least some sentences that had *not yet been imposed* at the time the defendant committed the instant offense, but that were imposed before sentencing for that offense. Blanket acceptance of the government's "snapshot" theory undermines Application Note 1.

Due to the deafening silence of Congress and the Sentencing Commission, the majority can point to no statutory or Guidelines provision instructing us to disregard the state courts' nunc pro tunc orders.  Instead, the majority turns to a canon of construction, asserting, through multiple levels of inference, that the canon suggests that the proper interpretation of the Guidelines requires that we disregard the state court orders.  Accepting this argument at face value,[7] the majority does nothing but to foster ambiguity in the Guidelines, making the rule of lenity all the more appropriate, as discussed below.  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 296 (2012) (discussing rule of lenity).

## VI.

Allowing the federal district courts to recognize the nunc pro tunc orders comports with our precedent, principles of comity and federalism, the rule of lenity and the concept of individualized sentences, including the parsimony principle, embodied in the sentencing statute Congress enacted, 18 U.S.C. § 3553(a).

We have previously so held.  In *United States v. Mejia*, the defendant was sentenced in state court to two years of probation for resisting arrest.  559 F.3d 1113.  A few days

---

[7] The Sentencing Commission's decision to exclude foreign and tribal court convictions from the list of convictions which qualify for an enhancement does not indicate that it contemplated the scenario before us, much less that it intended that the federal courts disregard state court orders of this nature.  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (warning that the *expresio unius* canon "must be applied with great caution, since its application depends so much on context.").

later, and before Mejia committed his federal crime, the state court terminated his probation. *Id.* at 1116. The Guidelines in that case added a point to the criminal history calculation if the defendant had been sentenced to "a term of probation of more than one year." *Id.* Despite the fact that the sentence imposed qualified for this enhancement, we chose to give effect to the order terminating the probation, holding that "Mejia's probationary sentence combined with his actual service of only a three-day probationary term was less than the one year required by [the Guidelines] for inclusion in his criminal history." *Id.* The only difference between *Mejia* and these cases is the fact that the orders here came after, rather than before, the federal offense conduct.

*United States v. Alba-Flores*, 577 F.3d 1104, is not to the contrary. The defendant in *Alba-Flores* was serving a term of probation of more than a year when he committed his federal offense. *Id.* at 1106. The state court reduced the term to less than a year, but the effective date of the termination was after the federal offense conduct and was not made retroactive by the state court. *Id.* The result was that, even in the eyes of the state, the defendant remained "under a criminal justice sentence *when he committed* his federal offense." *Id.* at 1111 (internal quotation marks omitted and emphasis added). The *Alba-Flores* majority, chiefly concerned with the defendant's legal status "*when* he committed his federal offense," chose not to authorize safety valve relief. *Id.* (emphasis added). This is a sensible outcome; the Guidelines instruct that we look to a defendant's status under state law when he committed the federal offense, and under the applicable state law in *Alba-Flores*, the defendant was on probation at the time of the offense.

By contrast, here state law explicitly tells us that the defendants were *not* under terms of probation when they committed their federal offenses. As discussed above, the state courts in *Yepez* and *Acosta-Montes* retroactively changed the defendants' legal status so that, in the eyes of the state, they were not on probation at the time of their federal offenses. Again, the Guidelines instruct us to look to state law, and under California law the defendants were *not* on probation at the time of their federal offenses. Therefore, *Alba-Flores* does not control in this situation.

Where, as here, state laws permit the modification of ongoing terms of probation, principles of comity, which the United States Supreme Court has recognized as "a bulwark of the federal system," *Allen*, 449 U.S. at 96, require that the federal courts should, where possible, recognize state court actions modifying or terminating those probationary terms. Forty years ago, the Supreme Court addressed the nature and importance of comity between federal and state courts in its decision in *Younger v. Harris*, 401 U.S. 37, 44–45 (1971):

> [T]he concept [of comity represents] a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, "Our Federalism," born in the early struggling days of our Union of States, occupies a highly

important place in our Nation's history and its future.

By crediting state trial court terminations of ongoing probationary terms, federal courts respect the fundamental "[p]rinciples of comity and federalism [that] counsel against substituting our judgment for that of the state courts" which are actually supervising the individuals on probation. *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also United States v. Alba-Flores*, 577 F.3d 1104, 1112 (9th Cir. 2009) (Kozinski, C.J., dissenting) ("The federal system relies heavily on state courts in sentencing defendants and it's wrong and pernicious to call these judgments into question because the state judges may have taken into account the effects on federal sentencing. State judges are often mindful of the federal implications of their sentences, as well they should be.").

We are thus unable to glean from the text of the Guidelines and the Application Notes thereto an answer to the question with which we are confronted. The clause "if the defendant committed the instant offense while under any criminal justice sentence, including probation," U.S.S.G. § 4A1.1(d), is susceptible to multiple interpretations. Where the scope of a criminal statute is ambiguous, we invoke the rule of lenity and resolve any doubt in the defendant's favor. "In these circumstances—where text, structure, and history fail to establish that the Government's position is *unambiguously* correct—we . . . resolve the ambiguity in [the defendant]'s favor." *United States v. Cabaccang*, 332 F.3d 622, 635 (9th Cir. 2003) (en banc) (alterations and emphasis in original) (quoting *United States v. Granderson*, 511 U.S. 39, 54 (1994)) (internal quotation marks omitted); *see also Albernaz v. United States*, 450 U.S. 333, 342 (1981) ("This

policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.") (quoting *Bifulco v. United States*, 447 U.S. 381, 387 (1980)); *People v. Materne*, 72 F.3d 103, 106 (9th Cir. 1995) ("[T]he rule of lenity applies where a criminal statute is vague enough to deem both the defendant's and the government's interpretations of it as reasonable."). Our job is to interpret and apply the Guidelines. Where, as here and in *Alba-Flores*, the Guidelines do not address the effect of the state court order at issue, we may defer to principles of federalism and comity and give effect to the order. Doing so is consistent with the rule of lenity, pursuant to which ambiguous statutes are resolved in the defendant's favor. *See Cabaccang*, 332 F.3d at 635. Applying the rule of lenity is particularly appropriate here, where the predicate state offenses were so minor that each of the four trial judges involved—the two state trial court supervising judges and the two federal district court sentencing judges—found the mandatory minimum sentence unjust under the circumstances of the crimes of conviction, and thus contrary to the directives enacted by Congress in § 3553(a). Chief Judge Kozinski is correct when he writes that "[w]e shouldn't be so eager to override the hands-on judgment of . . . trial judges who have actually seen the defendant and are far more familiar with his need for punishment than we are." *Alba-Flores*, 577 F.3d at 1113 (Kozinski, C.J., dissenting).

That federal courts should be allowed to credit the retroactive termination of probationary sentences when calculating criminal history points for safety valve eligibility does not mean that they must. What they *must* do is consider all of the sentencing factors set forth in 18 U.S.C. § 3553, to

impose a sentence making "an individualized determination based on the facts." *Carty*, 520 F.3d at 991. After correctly calculating the applicable Guidelines range, including factoring in safety valve eligibility, a district court may impose an above-Guidelines sentence when it is warranted. *See, e.g.*, *United States v. Cardenas-Juarez*, 469 F.3d 1331, 1334 (9th Cir. 2006) ("When the statutory safety valve requirements of § 3553(f) are met, 'district courts still "must consult [the] Guidelines and take them into account when sentencing," even though they now have the discretion to impose non-Guidelines sentences.'") (quoting *United States v. Cantrell*, 433 F.3d 1269, 1278 (9th Cir. 2006)). And because the state supervising judges are aware of the implications of modification orders in federal sentencing, the state courts are unlikely to issue such an order where they believe safety-valve eligibility is not warranted.

## VII.

The majority also points to *United States v. Martinez-Cortez*, 354 F.3d 830 (8th Cir. 2004), and *United States v. Pech-Aboytes*, 562 F.3d 1234 (10th Cir. 2009), two out-of-circuit decisions (relied on by the *Alba-Flores* majority) holding that sentencing courts should not credit state nunc pro tunc orders modifying terms of probation. Unlike either Yepez or Acosta-Montes, however, Martinez-Cortez sought to modify an *already completed* sentence. Both the Eighth and Tenth Circuits, moreover, relied on an incorrect view of the "implications" of the Application Notes to U.S.S.G. § 4A1.2, and ultimately reached conclusions not in fact supported by any authority.

In *Martinez-Cortez*, the defendant, Jerardo Martinez-Cortez, pleaded guilty to conspiracy to distribute

methamphetamine. *Martinez-Cortez*, 354 F.3d at 831. Martinez-Cortez had two previous Minnesota state convictions: one for leaving the scene of an accident, and one for driving while intoxicated. *Id.* For the first, Martinez-Cortez had been sentenced to ninety days in jail, with eighty-nine days suspended, followed by one year of probation. *Id.* For the second, he had been sentenced to thirty days in jail, with twenty-nine days suspended, and placed on probation for two years. *Id.* Martinez-Cortez was on probation from the DWI offense when he committed his federal drug offense, but had completed the probationary term by the time he was sentenced in federal court. *Id.*

After he pleaded guilty to his federal offense, but before sentencing, Martinez-Cortez sought and received nunc pro tunc orders from two state judges modifying his already-completed probationary terms. *Id.* He sought and received a reduction of his first probationary term (for leaving the scene of an accident) from 365 days to 364 days "for the express purpose of avoiding a criminal history point in his federal drug sentencing." *Id.* For the DWI term of probation, Martinez-Cortez "sought and received a reduction of the term of probation from June 19, 2002, to September 30, 2000, so 'he would be off supervision during the time the government alleges the federal [drug] conspiracy was in existence.'" *Id.* The district court credited the nunc pro tunc orders, and found that Martinez-Cortez was safety valve eligible; the Eighth Circuit reversed, with one judge dissenting. *Id.*

In concluding that Martinez-Cortez was ineligible for safety valve relief, the Eighth Circuit majority concluded that, as "a factual matter," Martinez-Cortez had committed his federal drug offense "while he was on probation for the DWI offense." *Id.* at 832. The majority ultimately held that, as

Martinez-Cortez had already served his sentences before asking for a nunc pro tunc modification, this was not one of those situations in which the Sentencing Guidelines "permit courts to disregard some state court convictions and sentences for the purposes of criminal history." *Id.* The majority concluded that "as a matter of federal law, Martinez-Cortez's lesser step of modifying his sentences *after they were served* for reasons unrelated to his innocence or errors of law is not a valid basis for not counting the sentences for criminal history purposes." *Id.* (emphasis added).

Writing in dissent, Judge Lay criticized the majority decision as being incorrect and "without authority." *Id.* at 833 (Lay, J. dissenting). "The majority opinion, in all due respect," he wrote

> fails to address the fundamental principles of federalism and deference owed by federal courts to state courts in processing their own criminal cases. The structure of the Guidelines evidences an intent on the part of the Sentencing Commission to look to the sentences actually imposed by state courts for state criminal convictions when calculating a federal defendant's criminal history score. Consonant with this idea, the Supreme Court has made clear that the proper forum in which to attack state convictions (and their attendant sentences) is a state court, not a federal one. In assessing the length of a federal sentence, therefore, the sentencing court looks only at the prior state sentences as they exist at the time of sentencing. . . . More importantly, the Defendant appeared before two distinguished

state court judges who ordered the terms of probation modified. There was no appeal from these modifications. The state court proceedings thus carry with them a presumption of regularity that the majority lightly casts aside.

*Id.* at 833–34 (citations omitted). Like the majority here, the majority there "fail[ed] to provide proper respect for and deference to the state court's modification of its own sentences." *Id.* at 835.

Moreover, *Martinez-Cortez* is factually distinguishable from the two appeals before us. What Martinez-Cortez sought to do by having his *already completed* sentences modified by action of state law is different from what either Yepez or Acosta-Montes sought to do by asking the trial judges overseeing their ongoing probationary terms to modify those terms. *See, e.g.*, Cal. Penal Code § 1203.3 (addressing the authority of state courts *during the term of probation* "to revoke, modify, or change its order of suspension of imposition or execution of sentence").

In *Pech-Aboytes*, the defendant, Paul Pech-Aboytes (a/k/a Javier Solis-Aboytes), pleaded guilty in 2007 to one count of possession with intent to distribute methamphetamine. 562 F.3d at 1235. In 2002, Pech-Aboytes had been convicted of a misdemeanor in California state court for manufacturing government-issued commercial drivers licenses, and had been sentenced to thirty-six months of probation. *Id.* at 1236 n.1. Due to "several probation revocations and reinstatements," Pech-Aboytes's California state probation was ongoing in 2007, when he committed his federal drug offense. *Id.* at 1236 n.2. After he pleaded guilty, but before he was

sentenced, Pech-Aboytes sought and received a nunc pro tunc order from a California state court terminating his probation as of September 30, 2007. *Id.* at 1236. At sentencing, the district court (relying on the Eighth Circuit's decision in *Martinez-Cortez*) declined to credit the state nunc pro tunc order, and found that Pech-Aboytes was not entitled to safety valve relief; the Tenth Circuit affirmed. *Id.* at 1238–39.

Concluding that Pech-Aboytes was not eligible for safety valve relief, the Tenth Circuit cited Application Notes 6 and 10 to U.S.S.G. § 4A1.2, and reasoned that "the Guidelines are specific about which prior convictions and sentences are counted in calculating a defendant's criminal history points, and which prior convictions and sentences are not." *Id.* at 1239. The *Pech-Aboytes* court then observed that "[t]he implication" of Application Note 10 "is that the district court should count previous convictions unless they have been set aside because of a finding of innocence or legal error." *Id*.

The Tenth Circuit also relied on the introductory commentary to the criminal history section of Chapter 4 of the Sentencing Guidelines, which, as noted in Part VI, states the general proposition that a "defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment." U.S.S.G. § 4A intro. cmt. This commentary, the court observed, "further indicates that the Guidelines are intended to capture, via an increase in criminal history points, the very behavior [the defendant] was attempting to avoid: the commission of a crime while under a probationary sentence. Such behavior is directly relevant to the harsher, mandatory-minimum penalty imposed when the safety-valve provision is inapplicable." *Pech-Aboytes*, 562 F.3d at 1240.

The majority adopts this illogical reasoning. As previously noted, neither Application Note 6 nor Application Note 10 to U.S.S.G. § 4A1.2 addresses how sentencing courts should view ongoing probationary terms that have been modified by state orders. Given the specificity with which these Application Notes dictate how courts should treat prior sentences, and that neither Note addresses nunc pro tunc orders modifying ongoing probationary terms, much less the specific, and perhaps unique, procedures enacted by the California State Legislature, it is not clear why the Tenth Circuit thinks the "implication" of the Application Notes is that the only previous convictions that the district court should not count are those that have been set aside because of a finding of innocence or legal error. Indeed, it is equally reasonable to read the Application Notes to exclude ongoing probationary terms that have been shortened by state modification orders from the types of sentences that should be counted, precisely because the defendants are not the more culpable criminals deserving of harsher sentences.

## VIII.

We are faced with two competing historical and legal realities: on the one hand, it is surely true that, at the times Acosta-Montes and Yepez committed their federal offenses, the state of California viewed them as on probation; it is equally true that, at the time of federal sentencing, under California law, they were not on probation when the offenses were committed. Nothing in the Guidelines, or in the cases cited by the parties, clearly indicates which of these realities should trump the other for the purposes of calculating criminal history points when determining the applicability of the safety valve at the time of sentencing. Ultimately, respecting "the fundamental principles of federalism and

deference owed by federal courts to state courts in processing their own criminal cases," *Martinez-Cortez*, 354 F.3d at 833 (Lay, J., dissenting), and recognizing that the "federal system relies heavily on state courts in sentencing defendants and it's wrong and pernicious to call these judgments into question because the state judges may have taken into account the effects on federal sentencing," *Alba-Flores*, 577 F.3d at 1112 (Kozinski, C.J., dissenting), there is nothing that precludes the district courts from taking into account these lawful state nunc pro tunc orders when calculating the defendants' criminal history score for purposes of safety valve eligibility. And, after applying the § 3553 factors, if the district court determines a higher sentence is warranted, it has the discretion to impose such a sentence, but it is not required to do so, if it believes such a sentence is unjust. Accordingly, I would affirm Acosta-Montes's sentence, vacate Yepez's sentence, and remand Yepez's case for resentencing.